THE UNIVERSITY OF DES MOINES v. LIVINGSTON, ADM'R.

1. **Evidence:** NO PREJUDICE—NO REVERSAL. The admission of certain evidence in this case, if it was not necessary under the issues, could not have prejudiced appellant, and is, therefore, no ground for a reversal.

2. **Subscription in Aid of College:** DEFENSE OF FRAUDULENT REPRESENTATIONS: EVIDENCE. In an action upon a subscription to the plaintiff university, where the defense is that the subscription was obtained by fraudulent representations, the declarations and statements of plaintiff's president are binding upon it, and are competent evidence of the facts stated by him, so far as they relate to the validity of the subscriptions; but the statements of a mere soliciting agent, made subsequent to the subscription, are not competent on the question of fraud.

3. ———: CONSIDERATION FOR: FACTS CONSTITUTING. A subscription to a college, for the purpose only of discharging a debt already accrued, is without consideration, and void. But where, in consequence of, and relying upon, a subscription, the college incurs expense and trouble in raising other funds for repairs and endowment, there is a sufficient consideration to sustain the subscription.

4. ———: CONDITION: FAILURE OF: EVIDENCE. Where one of the conditions of a subscription to a college was that an aggregate of more than $10,000 should be subscribed by a certain time, and $13,000 was subscribed, but the defense was that subscriptions had been obtained by fraudulent means and representations, and that there was not an aggregate of $10,000 of *valid* subscriptions, and the evidence offered by defendant showed, at most, but $1,000 of invalid subscriptions,— since the burden was on defendant to establish the defense, it was to be presumed that the remaining $12,000 of the subscriptions was valid,

and the evidence of the $1,000 invalid subscriptions, together with the issue to which it related, should have been laid out of the case by a proper instruction.

*Appeal from Marion Circuit Court.*

THURSDAY, DECEMBER 4.

THIS is an action at law, founded upon a written subscription of $500, made by T. C. Livingston, deceased, to the plaintiff, the University of Des Moines. There was a trial by jury, which resulted in a verdict and judgment for the defendant. Plaintiff appeals.

*C. C. Cole*, for appellant.

*Bryan & Bryan*, for appellee.

ROTHROCK, CH. J.—I. The written subscription which is the foundation of this action is as follows:

"For and in consideration of securing to the Baptist denomination of Iowa the property situate in Des Moines, and known as the 'University of Des Moines,' we, the undersigned, hereby bind ourselves individually 'to pay the sums set opposite our names, when in the aggregate ten thousand dollars is secured, provided the said amount is pledged by August 1, 1870.

"*Grinnell, March* 20, 1869.

[Signed] "T. C. LIVINGSTON, $500."

It is alleged in the petition, or rather in the claim against the estate of Livingston, that more than $10,000 was secured for the purpose set forth in the subscription on and before August 1, 1870. Upon this statement of the claim the cause was tried in the court below, and a judgment was rendered for the defendant. The plaintiff appealed to this court, and the judgment was reversed. See 57 Iowa, 307.

When the cause was remanded, the plaintiff amended the statement of claim by setting forth, in substance, that, after

securing said subscriptions to the amount of $10,000 and upwards, the board of trustees accepted the same, and, upon the faith of said subscriptions, and relying upon the payment of the same, made arrangements with the holder of a mortgage against plaintiff's property, for the payment of which said subscription was raised, by which arrangement the holder of the mortgage agreed to discount the same in the sum of $1,000, upon condition that the balance of his claim should be paid him on or before a certain time; that said trustees made a contract with S. Maria Childs, by which she agreed to furnish the money to take. up said mortgage, and to hold the same for the use and benefit of the plaintiff, and thereby save to the college the $1,000 discount, the said S. Maria Childs knowing of and relying upon said subscriptions, and the promise of the subscribers to pay the same; that plaintiff, relying upon the promise of Livingston and others to pay their subscriptions, was induced to, and did, employ one J. F. Childs and others, at great expense, to raise other and additional subscriptions to furnish and repair the college building, and to solicit subscriptions and raise money as an endowment fund for the plaintiff; and that, relying upon the promise of said Livingston and other subscribers to pay their said subscriptions, the plaintiff raised the sum of $3,000, and expended the same in finishing its said college building; that plaintiff, relying upon said subscriptions, employed teachers in said college, and incurred a large liability for the payment of their salaries, and raised by subscription the sum of about $25,000 as an endowment fund for said college; that the persons subscribing for the said sum of $3,000 and for said endowment were induced to, and did, make and pay their subscriptions, relying upon the promise of said Livingston and other subscribers to pay their subscriptions, and thereby save the said property to the plaintiff, and the sums so subscribed and paid by them; and that, therefore, the subscription of Livingston was founded upon a good and sufficient consideration.

The defendant answered by a denial that there was any consideration for the subscription, and by alleging that, at the time and before Livingston signed said subscription, the plaintiff was indebted in the sum of about $10,000, and that said subscription was obtained solely for the purpose of raising money to pay said indebtedness, and that neither Livingston nor his estate ever received any consideration whatever for the promise to make said gift. As a further answer and defense, it was alleged that enough of the subscriptions taken to pay off said indebtedness to reduce the amount of the valid subscriptions below $10,000 were made by persons not able to pay, and were secured by false and fraudulent representations of the plaintiff's agents engaged in procuring said subscriptions, to the effect that the Baptist church, owning and controlling the university and similar institutions, at Pella and Burlington, Iowa, had decided to abandon the colleges at Pella and Burlington, and concentrate all their college capital and influence in the university at Des Moines; that in truth no such intention on the part of the Baptist denomination had been formed, nor any such decision made, as said agents well knew at the time; that by their representations a large number of subscribers, who believed them to be true, were induced to sign said subscriptions; that, by reason of the premises, said subscriptions were void, and the said subscribers refused to and never did pay the same, and they are now barred by the statute of limitations; that by reason of the aforesaid facts the said subscription never had $10,000 of collectible subscriptions pledged thereto, and by reason thereof was never binding on Livingston or on his estate. As a further defense, it was alleged that said false and fraudulent representations were made to Livingston, and that by reason thereof he was induced to make his subscription, and that, the same having been obtained from him by fraud, he was not at any time liable thereon.

The court determined that, upon the issues, the burden of

proof was on the defendant, and his evidence was first introduced. He first offered an abstract of title, showing that the Des Moines University acquired the legal title to its site and property in the month of November, 1865. This evidence was objected to by plaintiff as irrelevant and immaterial. The objection was overruled, and the evidence admitted. This is the first ground of complaint made by appellant's counsel. It will be observed that by the written subscription the amount subscribed was in consideration of "securing" the property known as the "University of Des Moines" to the Baptist denomination of Iowa. Now, while it is impliedly conceded by the amended petition, and expressly averred in the answer, that the subscription was for the purpose of securing the property by paying off and discharging the mortgage upon it, and not for the purpose of securing it by purchase, we think there was no error in admitting evidence of title. It may have been unnecessary, but we cannot see that it worked any possible prejudice to plaintiff. The same may be said of the oral testimony introduced to show that the subscription was taken to pay debts previously contracted.

*1. EVIDENCE: no prejudice— no reversal.*

II. Next, it is claimed that the court erred in admitting the testimony of Delos Arnold, who was one of the persons who signed the subscription. His testimony related to the issue made by the answer, that subscriptions other than that of Livingston were obtained by fraudulent representations. It is urged that his testimony did not show that any fraudulent representations were made to him. We think that the objection would be well taken if it were not for the appellee's abstract. It appears therefrom that the witness did testify to the representations substantially as alleged in the answer. Other objections were made to the testimony of Arnold and of other witnesses. It appears from appellee's abstract that some of the evidence objected to was ruled out and taken from the jury. We need not discuss the rulings upon the evidence further than we have. There are other

errors in the record which, in our opinion, demand a reversal of the judgment of the court below, and, in leaving this branch of the case, we will say, in view of a new trial, that any evidence of fraudulent representations to procure subscriptions is competent under the issues, and the declarations and statements of the president of the institution are binding upon it, and are competent evidence of the facts stated by him, so far as they relate to the validity of the subscriptions. It is also very plain that the declarations of a mere soliciting agent of the plaintiff, made after the subscription was made, are not competent upon the question of fraud.

2. SUBSCRIPTION in aid of college: defense of fraudulent representations: evidence.

III. The appellee insists that the subscription, being a mere gift to discharge an indebtedness already accrued, was without consideration, and void. Upon the former appeal it was held that such a subscription was without consideration. But it was also held that "if the plaintiff, in consequence of, and relying upon, the subscription in question, incurred the expense and trouble of raising $3,000, and of expending it upon the college building, this would, under the authorities, constitute a consideration sufficient to support the subscription." And the judgment was reversed, because the court excluded evidence of procuring the additional subscription of $3,000 and expending it upon the building. We have no disposition to question the correctness of the ruling upon the former appeal. The evidence on the last trial shows that, after the subscription to pay the debts was raised upon the faith that thereby the property would be saved and secured to the university, large amounts were raised for repairs and expended for that purpose, and that an endowment fund was in like manner raised. We think that, under the authorities cited in the opinion on the former appeal, a sufficient consideration for the subscription in controversy was shown.

3. ——: consideration for: facts constituting.

IV. It also appeared in evidence in the last trial that

about $13,000 was subscribed upon the subscription, part
of which is now in controversy. There is no
conflict in the evidence as to this fact. The
aggregate amount of the subscriptions was about
$13,000. The defendant, as has been seen, claimed that part
of the subscriptions were made by persons not able to pay,
and part was obtained by the false representations above set
out, and that, by reason thereof, the subscription was never
binding on the decedent or on his estate. Upon this issue,
the court instructed the jury as follows: "(5) If you find
from the preponderance of the evidence that, by reason of
some part of the subscription having been procured by fraud-
ulent representations, and some part of it being worthless
when taken and accepted, with knowledge of its worthless
character, and solely to enable the plaintiff to collect such of
the subscription as was good, including that sued on, there
was not $10,000 of good and valid subscription secured and
pledged by August 1, 1870, and that $10,000 thereof has not
been paid, your verdict will be for the defendant, without
regard to what may have been done, if anything, by the
plaintiff, in reliance upon the subscription. This defense
will not, however, avail the defendant, if the decedent gave
the subscription with knowledge of the wrongs on the plaint-
iff's part." This instruction should not have been given.
The burden of proof was upon defendant, under the issues,
to show that there was not $10,000 of valid subscriptions.
This fact was not shown. It is true that Arnold and Day
were called as witnesses to prove that their subscriptions
were invalid by reason of fraudulent representations. But
this was not enough. Their subscriptions were $500 each,
and, if they should be deducted from the aggregate, the sum
of $12,000 still remains as presumably valid and collectible.
Instead of giving this instruction, the jury should have been
directed to disregard the testimony of Arnold and Day, so
far as it tended to show that their subscriptions were obtained
by fraud. They should have been directed that, as there was

*4. ———: con-
dition: fail-
ure of: evi-
dence.*

no proof to sustain that defense, the issue made thereupon was out of the case, and that they should confine their deliberations to the other issues raised by the pleadings. For the error in giving this instruction, the judgment of the circuit court will be

REVERSED.

BECK, J., took no part in the decision of this case.