JOSIAH S. BEELER AND J. F. BEELER v. THE HIGH-LAND UNIVERSITY COMPANY.

### No. 383.

1. PROMISSORY NOTE—*Interest Payments—Limitation of Action.* The provision of the note sued on for interest, the principal of which was payable five years after date, is as follows: "With interest payable semiannually, at seven per cent. per annum, and, if not paid punctually when due, it shall become a part of the principal, and bear interest at the same rate." *Held*, that instalments of interest which became due more than five years before the bringing of the suit are not barred by the statute of limitations.

2. ——— *Conditions Precedent—Evidence of Performance.* The note sued on contained this condition: "This note is to be void unless the first $20,000 is secured by September 1, 1885." It was given as a part of a subscription to an endowment fund to the university.   *Held*, that before the plaintiff could recover on the note it was obligatory on it to prove by competent evidence that valid subscriptions thereto had been obtained in the sum of $20,000 before the date mentioned.

3. ———— *Best Evidence—Subscriptions in Writing.*  It appearing that all subscriptions thereto were in writing, such written obligations were the best evidence thereof, and it was not competent, in the first instance, to establish this condition precedent by parol evidence.

4. ———— *Records of Corporation—Secondary Evidence.*  Any act of a corporation which must necessarily be performed by its board of trustees duly organized, and a record thereof kept, cannot be proved by parol evidence, in the absence of any proof of the non-existence of such record or that such record, if any exists, is inaccessible to the party offering such proof.

Error from Doniphan district court; R. M. EMERY, judge.  Opinion filed September 17, 1898.  Reversed.

*Albert  Perry,* and  *Ryan & Stuart,* for  plaintiffs  in error.

*James Falloon,* for defendant in error.

The opinion of the court was delivered by

MAHAN, P. J. :   This is a suit by the defendant in error against the plaintiffs in error upon a promissory note payable five years after date, as follows :

"HIGHLAND, KAN., June 1, 1885.

" On or before five years after date, we promise to pay to the order of the treasurer of Highland University  $200, for value  received, and  payable without defalcation  or  discount, and with  interest payable semi-annually from date until paid at the rate of seven per cent. per annum, at Highland, Kansas ; and if the interest  is not  paid  punctually when  due, it  shall become a part of the principal and bear interest at the same rate.   This note is given for the endowment fund of Highland University.   The interest only to be used for general expenses."

On the back thereof is written :

" This note to be  void  unless the  first $20,000 is secured by September 1, 1885.   And if the school ever fails to go forward the principal reverts to the giver."

The defendants' answer contained : (1) A general denial; (2) a plea of the statute of limitations as to the interest due prior to the 1st day of June, 1889; (3) an allegation that the note was a donation given on a condition that $20,000 was to be raised by September 1, 1885, in good, valid subscriptions by solvent subscribers, and was given on the further condition that if the university should fail to go forward the principal should revert to the giver ; that said sum was not raised in the time specified, and that the university had failed to go forward as specified in said condition, and that by reason thereof said note had failed ; (4) an allegation that the note sued on was obtained by the false representations made by one Duncan Brown, plaintiff's duly authorized agent, as to subscriptions already made, and particularly the pretended subscription of one J. P. Johnson ; that it was represented to the defendants that Johnson had proposed to subscribe on the same conditions $10,000 if the citizens of Highland and vicinity would subscribe a like $10,000, and that Johnson had not in fact subscribed $10,000 before September 1, 1885, on like conditions, or subscribed $10,000 at all.

Plaintiff demurred to the plea of the statute of limitations, and its demurrer was sustained. Plaintiff filed a reply to the other counts of the defendants' answer, which contained : (1) A general denial ; (2) a special denial that there were any conditions attached to the note sued on except such as were set out in the note, and an allegation that they were complied with ; (3) the claim that no representations were made to the defendants to procure the note sued on herein ; that the defendants attached thereto such conditions as they saw fit and such conditions were generally understood among the donors to the said endowment fund,

and that the defendants, with full knowledge of all the conditions that may have been attached to any subscription, executed the note without any reference thereto ; (4) an allegation that the defendants at the time they signed the note were fully aware of the manner in which all subscriptions were made and the conditions thereto attached, and with full knowledge thereof executed the note sued on as well as the other donors executed theirs, and such other donors have largely paid their donations and interest thereon ; (5) an allegation that J. P. Johnson had not, at the commencement of the suit or at any other time, availed himself of any conditions attached to his subscription, and that the conditions attached by Johnson were a part of the act incorporating the plaintiff. There was a trial to a jury on the issues thus joined and a judgment for the plaintiff on the note.

The burden being on the plaintiff to show that the conditions on which the note was to be valid had been performed. or had happened, it offered the oral evidence of Duncan Brown, who solicited the subscriptions, and who was at the time one of the trustees of the university and authorized by the board to solicit the donations, who testified that J. P. Johnson and Doctor Ganse, secretary of the board of aid for colleges of the Presbyterian church, had a conversation in which Johnson proposed to give the college $10,000 on the condition that the citizens of Highland and vicinity would give a like $10,000 to endow the first chair in the university ; that the conversation was reduced to writing, a typewritten copy furnished to him, and that he had copied that in a little book of his own ; that the same had been read, either from the typewritten copy or his book, at a public meeting, before he began taking subscriptions and before any

notes were given ; that he did not know whether the
defendants were at the meeting where the proposition
was read or not ; and that he had procured subscrip-
tions to the university amounting altogether to nearly
$12,000.    He was asked from whom he obtained
these subscriptions, and he said he could only an-
swer by reading a book which he held in his hand in
which he had put it down in the ordinary course
of subscriptions ; that ''there was really no such
thing as a subscription — the idea that seems to be in
the mind of some people ; that is to say, it was not a
subscription paper which people sign their names to.''
He was then asked : '' I am not asking you about who
signed the paper ; I am asking you to give the amount
that you obtained of the different parties as a subscrip-
tion to this endowment fund ?''    The answer was, '' It
depends upon what you mean by a subscription.''
He was then asked to state the amount that he had
obtained, and to this he replied, '' I can give that by
reading from this book.    Do you want me to read
from the book the names ?    I have them here ; of
course I could not remember them.''    He was asked
to look at the book to refresh his memory ; and
whether he had an independent recollection of each
man's subscription — the amount subscribed by differ-
ent parties.    To this the defendants objected, as being
incompetent and irrelevant.    The court inquired :
''·These entries were made at the time these· promises
were secured, were they ?''    To this the witness
answered in the affirmative, and the objection was then
overruled, and the defendants excepted.    The witness
proceeded to state the names· and amounts that he
claimed had been subscribed to make up the $10,000
which was to meet a like subscription proposed by
Johnson.    During this statement he was frequently

asked by plaintiffs' counsel whether the amount·was in note or in cash. The objection was again renewed from time to time that this oral statement was not the best evidence. At the conclusion of this statement he was asked :

"Q. Did Mr. Johnson subscribe anything? A. Yes, sir.

"Q. How much?" Objected to by the defendants as incompetent and not the best evidence. This objection was overruled and excepted to. "A. $10,000.

"Q. Now, I will ask you whether or not these subscriptions were obtained before September 1, 1885? A. They were.

"Q. Where you have testified to notes having been given, do you know whether or not they were given to you individually for the university? A. No, sir, not in every case."

The plaintiff then called its treasurer and asked whether Mr. Gates fulfilled his subscription by cash or by note prior to September 1, 1885. This was objected to as incompetent, irrelevant, and not the best evidence. The objection was overruled and excepted to, and the witness answered that Mr. Gates gave a note. ·He then testified that a number of other subscribers gave notes, and that as to others he knew nothing. The plaintiff then rested its case.

At the conclusion of the plaintiff's evidence, the defendants moved to strike out all of the oral testimony of Duncan Brown and Treasurer Allen as to the subscriptions being made to the endowment fund as a performance of the condition in the note, which motion was denied by the court, the defendants excepting. The defendants demurred to the evidence for the reason that it was not sufficient to establish a cause of action against them. This demurrer was overruled and an exception to that ruling allowed.

It appears from the record that the subscription of Johnson alluded to was reduced to writing, and amounted to an agreement to pay to the university seven per cent. interest on $10,000 during the life of Johnson, and a promise that he would make provision that his executors should continue to pay interest or pay the principal sum to the trustees after his death ; or, if he had invested $10,000 himself from which to raise the interest, that he would direct his executors under his will to turn these securities over to the board of trustees of the college.   So that in point of fact there was no subscription by Johnson of $10,000 to the university as an endowment, within the meaning of the understanding of the parties proposing to raise the fund of $20,000 therefor.

The first specification of error is that the court erred in sustaining the plaintiff's demurrer to the second count of the defendants' answer, pleading the statute of limitations as to the interest.   It was the agreement that if the interest was not paid it should become a part of the principal and likewise draw interest.   It seems to have been intended by the parties that the makers might, at their option, pay the interest or not ; and if they did not, that it became a part of the principal of the endowment and drew interest thereafter.   So that no cause of action therefor really accrued independent of the note itself.   So long as the note remained a valid cause of action, the interest likewise followed it.

It is next claimed that the court erroneously overruled their demurrer to the plaintiff's evidence.   The ground on which this contention rests is that the evidence did not show that the condition on which the note was to be payable had happened or been performed, and that it did not show that the plaintiff

had accepted the promise by any act of its board of trustees or by any unequivocal act done by the plaintiff on the faith of his subscription, so that there was no consideration for the promise to pay on the part of the defendants. It is true there was no competent evidence to establish the happening of the condition precedent. The third contention is that the court erroneously admitted this evidence, and the fourth is that the court erroneously overruled their motion to strike it out. A subscription, according to the books, is a written undertaking to donate or pay a sum of money for a particular purpose. It is disclosed by the record in this case that the contracts, so far as any were actually made, were in writing. The motion should have been sustained. It was error to admit the evidence as proof of subscriptions, and was likewise error to deny the motion of the defendants to strike it out. So that in fact there was no evidence from which the court could say that the condition on which the note was made payable had been performed, and it was error to overrule the defendants' demurrer thereto. There was an entire absence of any proof of an acceptance by the plaintiff, either formally or by unequivocal act, such as is required by law. It is true the giving of a note, according to our statute, imports a good consideration therefor; but it appearing from the evidence partially and from the note itself that the promise was a mere voluntary one, the presumption of a consideration was overcome.

In rebuttal, for the apparent purpose of attempting to show that the plaintiff had, relying upon this subscription, done something that would constitute a consideration for the promise to pay, the following question was asked of Duncan Brown, who was recalled on behalf of the plaintiff: "Did you intro-

duce any new branches in the college proper on the faith of these subscriptions?'' The defendants objected to using the words, '' on the faith of these subscriptions,'' as calling for a conclusion of the witness. This objection was overruled and an exception to the ruling saved. The answer was: '' We employed a music teacher and additional help in the arts department.'' Counsel for defendants concede that it was a proper question, in so far as it tended to show that the college had gone forward. The objection ought to have been sustained. The facts and circumstances attending the expenditure of money might have been proper to show that expense was incurred on the faith of the subscription, but it was not proper to permit the witness to say, as a conclusion, that it was done on the faith of the subscription. The same objection was made to like questions a number of times, which the court also overruled.

For the apparent purpose of attempting to show that the college had so far performed the conditions on which Johnson had agreed to pay interest on $10,000, in rebuttal the plaintiff propounded to the witness Brown this question : '' Do you know whether the presbytery of Highland approved of the act of the legislature in transferring the control of Highland University to the synod of the old Presbyterian church of Kansas—do you know whether the presbytery took any action on it?'' This was objected to as being incompetent and calling for a conclusion of the witness. The presbytery could only take action, as we all must know, in the ordinary mode in which a body of men assembled officially act. If there was no record of such action retained, then secondary evidence might be used, but it was incompetent to show by oral testimony what the presbytery had done with-

7—8 KAN. APP.

out first showing that its action had not been recorded,
or that the record was inaccessible to the plaintiff.
Again, it was asked of this witness: "After the
action of the presbytery, I will ask you whether the
synod of the old school of the Presbyterian church of
Kansas took charge of Highland University?" This
could only be done by act of the body of the presby-
tery assembled in the usual course, which must nec-
essarily have been evidenced by writing of some
character. It was objected to as being incompetent
and being founded on evidence which had not been
introduced. This objection was overruled, and the
question was answered, "They did." Then followed
the question: "Do you know whether they took
charge or not with the consent of the presbytery at
Highland?" This was objected to as being incom-
petent evidence, which objection was overruled, and
excepted to by the defendants. The answer was,
"Yes." Then followed the question: "Did they
take charge by consent of the presbytery at High-
land?" This was objected to by the defendants as
being incompetent and not the best evidence. This
objection was overruled, and excepted to by the de-
fendants, and the question was answered, "Yes."
The presbytery at Highland could only consent by
action taken at a meeting of that body, evidenced by
a record of their action.

The sixth assignment of error is that the court re-
fused to give to the jury the instructions requested by
the defendants numbered 6, 8, and 9. The sixth re-
quest was as follows:

"The jury are instructed that if they find from the
evidence that the note sued on was executed to plain-
tiff on the promise and agreement made with them
that the note of one John P. Johnson should be of the
same tenor and effect, and with only like conditions

as the note sued on, and the subscription of John P. Johnson was necessary to complete the endowment of $20,000, the jury will return a verdict for the defendants.''

It is claimed that Johnson gave no note whatever or that he gave no obligation to pay $10,000 at any time, except as hereinbefore stated.   It is clear from the record, as well as from the note itself, that the proposed payment of $200 by the defendants was a conditional promise, conditioned on the subscription of full $20,000 to endow the first chair of the university.   If, at the time these subscriptions purported to be made, they were for any reason not valid and binding subscriptions to pay money for the endowment of the chair, the defendants would not be held on their promise.   This is the purport of the instruction requested and it should have been given.   It is likewise true that if a part of the subscription for the enterprise failed by the act or neglect of the plaintiff, or the purpose for which the defendants proposed to pay the $200 failed by reason of the act and neglect of the plaintiff, it could not enforce payment from the defendants.

The eighth request was as follows :

''The jury are instructed that the subscription of J. P. Johnson depended for its validity upon the conditions therein named, and unless the Highland University Company complied with the conditions therein named said J. P. Johnson could avail himself to defeat the collection of his subscription.''

This instruction should have been given to the jury.

The ninth request was as follows :

'' Where a subscription is made as a donation, as in this case, by one, on the promise that others shall make like donations, the consideration of an instrument so executed and its validity depend upon the

completion of the subscriptions in the amount and character contemplated. And if the jury find from the evidence that the defendants executed the note sued on as a donation to the endowment fund of the Highland University in the sum of $20,000, the balance of said subscription to be made by others, and with like binding effect, and the jury find from the evidence that other subscriptions of like effect necessary to make up said subscription of $20,000 by September 1, 1885, were not made, they, the jury, are instructed that the consideration of the note sued on had wholly failed, and the jury will return a verdict for the defendants.''

This should have been given to the jury in connection with the eighth request. (24 A. & E. Encycl. of L. 328–331, and note 3 on p. 331 and cases there cited; *The University of Des Moines v. Livingston, Administrator*, 65 Iowa, 202, 21 N. W. 564.)

The seventh assignment of error is that the court erroneously instructed the jury in its eighth, ninth and tenth instructions. The eighth instruction was as follows:

'' You are further instructed, that the condition in regard to the school going forward does not mean that the school shall improve, either in regard to attendance of scholars, the buildings, or higher discipline and scholarship, but simply that the school shall continue to be carried on in a reasonably successful manner.''

The contention is over the clause in the note which provides that in case the school ever fails to go forward the principal reverts to the giver. The construction of the court, on the face of the note and the surrounding circumstances at the time of its execution, seems to be the correct one. The note never became valid unless the chair was permanently endowed by the securing of $20,000 as proposed. This condition nec-

essarily involves the prior happening of the former one; and further, that the money shall have been paid by the defendants; and the provision means, as the court fairly construed it to mean, that the fund should not be used for any other purpose than the endowment of the chair in the university as a university.   When it ceased to be so used it reverted to the donor, who necessarily must theretofore have paid the same.

The ninth instruction complained of was as follows :

"The court further instructs you, that if the defendants knew that one John P. Johnson had made a proposition to the plaintiff that if the people in Highland and vicinity would donate $10,000 toward the endowment of a chair in Highland University without inquiring as to whether any conditions were attached to said Johnson's offer, agreed to subscribe $200, then they would become privy to the offer of said Johnson, and all conditions thereto attached, and could not complain of the same and offer any of the conditions as a defense unless the same was misrepresented by plaintiff's agent and he was misled thereby."

This instruction is not applicable to the facts in the case.   There is no contention but that this subscription by the defendants was conditioned upon the raising of $20,000, and the contention is that the Johnson subscription is a valid subscription and a part thereof. It was competent for the defendants to show that the consideration to them had failed by showing that Johnson's subscription was an invalid one, and was in fact no subscription at all.   And it is further undisputed that the defendants at the time they made the subscription knew nothing about the conditions of Johnson's offer except what was disclosed to them by Duncan Brown.   The court committed error in giving this instruction.

The tenth instruction complained of was as follows :

" The court further instructs the jury, that the fact of the defendants subscribing $200 to the endowment fund makes them privy to J. P. Johnson's offer if they were fully conversant with its terms, and they cannot be heard to say that said Johnson was to execute a note similar to the one sued on, as the Johnson offer as known to them contained the terms thereof."

The same remarks apply to this instruction as were applied to the ninth. It might be further pertinent to say that it is not disclosed anywhere in the record, save by one finding by the jury, which is unsupported by the evidence, that the defendants knew of the conditions attached by Johnson under his alleged subscription. Indeed, it is conceded that the contract of Johnson was not made and was not known until long after the defendants' note was given.

By the eighth assignment of error the defendants complain that the court refused to submit to the jury certain special findings requested by them. The first request complained of was the following : " Did said John P. Johnson, about June 1, 1885, execute and deliver to the plaintiff his subscription of $10,000 in writing to said endowment fund with other additional and different conditions ? " There was no question about this. It was unnecessary to submit the question to the jury.

The seventh special finding requested was : "How many professorship chairs have been endowed in said university?" The purpose of this was to show the invalidity of Johnson's subscription, and was proper to be submitted to the jury. The same remarks apply to the eighth request, as to whether additional chairs had been established as provided by the Johnson subscription. The same remarks apply to the ninth and tenth. The twelfth was immaterial. There was no question but that the fund, so far as it had been paid

Beeler v. University Co.

in by subscribers, was being used in the manner contemplated by the donors. The fourteenth was not a proper finding to be submitted. The fifteenth request should have been submitted to the jury, as it was intended to call the jury's attention to the fact as to whether Johnson's subscription was a valid subscription or not. The validity depended on the fact inquired about in this request. The sixteenth is the same in substance, and should have been given.

The seventeenth was a broad interrogatory as to whether the conditions on which Johnson proposed to pay the interest on $10,000 as a part of the endowment fund, according to the terms of his written obligation, had been complied with by the university. Whether the conduct of the university had rendered the half of the subscription invalid within the time which the defendants took to pay their donation, and by reason of that act the object or purpose of the donation had become ineffectual, or had failed, was an important question to be decided in the case. The request should have been granted.

The ninth contention is that the court erred in overruling the motion of the defendants for judgment on the findings of fact. The findings of fact were not sufficient to entitle either party to a judgment thereon irrespective of the general verdict. The motion was properly denied. The tenth assignment of error is that the court erred in refusing to set aside the verdict and special findings of the jury and grant a new trial. For the reasons hereinbefore stated a new trial should have been granted, and it was error to deny the motion. Some of the important special findings are without evidence to support them.

The judgment of the district court is reversed, and the case remanded with directions to the court to sustain the defendants' motion for a new trial.