WILLIAM F. KING, Appellee, v. CHARLES D. CARROLL, Treasurer of Linn County, Iowa, Appellant.

**Taxation:** DEDUCTION OF DEBTS. A written obligation to pay a certain sum of money to the endowment fund of a college upon the death of the obligor, which is given for the purpose of securing and rendering valid other subscriptions to the fund, is based upon a valid consideration and is a debt within the meaning of Code Section 1311, which may be deducted from the amount of moneys and credits assessed to the maker.

**Same:** SUBSCRIPTION TO ENDOWMENT FUND. The provisions of Code Section 1311 prohibiting the deduction from an assessment of moneys and credits "of any unpaid subscriptions to any institution, corporation, or company," refers to subscriptions to the capital stock or funds of an institution with the expectation of receiving an equivalent therefor, and has no application to a binding subscription to the endowment fund of a college.

*Appeal from Linn District Court.*— HON. J. H. PRESTON, Judge.

TUESDAY, JANUARY 16, 1906.

PLAINTIFF appealed to the district court from an assessment on moneys and credits against him for the years 1900 to 1903, inclusive. Upon a trial in that court it was found that plaintiff was not subject to an assessment on moneys and credits for the years named, and the assessment was vacated and set aside. Defendant appeals. *Affirmed.*

*Voris & Haas,* for appellant.

*Deacon & Good,* for appellee.

DEEMER, J.— The sole question in the case is: Is plaintiff entitled to a deduction from his moneys and credits of the amount of a note which we shall presently set out in

1. TAXATION:
deduction
of debts.

full? Plaintiff is the president of Cornell College, which institution of learning is located at Mt. Vernon, in this state. That college was seeking to enlarge its endowment, that it might increase the scope of its work, and plaintiff, to aid therein, his wife joining him, made, executed, and delivered the instrument of which the following is a true copy:

$20,000.    Mount Vernon, Iowa, February 15, 1898. For value received, we, William F. King and Margaret M. King, husband and wife, residing at Mount Vernon, county of Linn, State of Iowa, being of full age and in the enjoyment of our usual health, and in the full possession of our faculties, do hereby promise to pay to Cornell College at Mount Vernon, Iowa, within ten (10) years of the date hereof, the sum of twenty thousand dollars ($20,000). The said twenty thousand dollars, when paid, shall become a part of the permanent endowment of said college, and shall be added to the thirty thousand dollars ($30,000) already accepted from us by the trustees of the college, thereby making a permanent chair of fifty thousand dollars ($50,000) in· memory of our daughter Lucy H. King, but the interest only thereof shall be devoted under the direction of the board of trustees of the college to the support of said chair in perpetuity. No suit or other proceedings of any kind for the

collection of such sum shall be brought or maintained in any court prior to the death of one of us, nor shall said sum, prior to the death of one of us, bear interest, whether matured or otherwise; but, in the event of the death of either one of us, said sum of twenty thousand dollars ($20,000) shall become due and payable by the survivor of us within one year after the death of the other. We further agree that in lieu of paying any stipulated rate of interest, while the said principal sum is in our hands, we hereby promise and agree that any and all donations that either of us may make to the college, after the date of this paper, and prior to the paying of the principal sum to the college as above, shall be regarded as a substitute for interest, which judging from the past will be a full equivalent for ordinary interest. This note is made for the purpose of assisting in providing proper endowment for Cornell College, and to aid in securing the means necessary to make valid and binding sundry subscriptions and donations which have been made upon condition that certain other sums be raised, in order that such conditional donations may become valid and binding. In full compliance with the above we do each in each other's presence, sign our names hereto, this 15th day of February, 1898. Margaret M. King.    William F. King.

This note was without money or property consideration; but on the strength thereof the college did enlarge its work and increased its obligations and responsibilities. Margaret M. King, wife of plaintiff, died in July of the year 1903, and since the happening of that event, and within the time specified in the note, plaintiff met and discharged his obligation according to its terms. If this instrument should be treated as a debt, which plaintiff is entitled to have deducted from his moneys and credits, the judgment of the trial court is right; otherwise it should be reversed. By section 1311 of the Code it is provided, in substance, that one may deduct from his moneys and credits the gross amount of all debts " in good faith owing by him," but that " no acknowledgment of indebtedness not founded on actual consideration, and no acknowledgment made for the purpose of being so deducted shall be considered a debt." It is also provided

that no deduction shall be made on account of any deposit or
security note, given in aid of the organization of a mutual
insurance company for the premiums of insurance, nor on
account of any unpaid subscriptions to any institution, so-
ciety, corporation, or company.

Defendant contends that the instrument we have quoted
is not founded upon an actual consideration, and that it was
in fact given on account of an unpaid subscription to an
institution or society known as " Cornell College," as an
aid to its endowment fund.    The instrument speaks for
itself, and undoubtedly created a debt binding and enforce-
able against the makers thereof.    Time of payment was post-
poned until one year after the death of one of the makers;
and the object was declared to be to assist in the raising of
a proper endowment, and also to make binding certain other
and sundry conditional subscriptions.    The rate of interest,
was uncertain, but was estimated to be the equivalent of
ordinary interest, although this was left to the discretion of
the makers.    There is no doubt that from the time of the
execution and delivery of this instrument it became a bind-
ing and enforceable obligation according to its terms, and
that it was based upon a sufficient consideration, to wit, the
validating of other conditional subscriptions and donations.
It was something more than a gratuitous subscription, which
might be revoked at any time before it was acted upon.    By
its very terms it was made and accepted in order to make
other donations and subscriptions valid; and in addition
thereto it was acted upon by the college in increasing its
obligations, etc.    That these things constituted a full and
valid consideration for the note is clearly established by
authority.    *Waters v. Union Trust Co.,* 129 Mich. 640 (89
N. W. Rep., 687); *Amherst v. Cowls,* 6 Pick. 433 (17 Am.
Dec. 387); *Lafayette County Monument Corp. v. Ryland,*
80 Wis. 29 (49 N. W. Rep. 157); *Simpson Centenary Col-
lege v. Bryan,* 50 Iowa, 293; *Ft. Madison v. Donnell,* 110
Iowa, 5; *McDonald v. Gray,* 11 Iowa, 508; *Williams v. Dan-*

*forth,* 12 Pick. 541; *North Soc. v. Matson,* 36 Conn. 26; *Patrick v. Barker,* 35 Iowa, 451. After the acceptance of the note by the college authorities it was beyond the power of the makers to withdraw or rescind it. There is no doubt, then, that this instrument created a debt in good faith owing by the makers and each of them, and that it was founded upon an actual consideration.

The only other question is: Was it given on account of an unpaid subscription to an institution or society, within the meaning of those terms as they are now found in the

2. SAME: subscription to endowment fund.

statute referred to? This presents a problem much more difficult of satisfactory solution than the former one. In arriving at a correct conclusion on this branch of the case it seems necessary to review the history of that clause of the statute now under consideration. It first appeared in the Code of 1851 (section 467) as follows: "But no person will be entitled to a deduction on account of any obligation of any kind given to an insurance company for the premium of insurance, nor on account of any unpaid subscription to any institution or society, nor on account of a subscription to or installment payable on the capital stock of any company or corporation." In the Revision of 1860, as section 722, it read: "But no person will be entitled to any deduction on account of any obligation of any kind given to any insurance company for the premiums of insurance, nor on account of any unpaid subscription to any institution, society, corporation or company." In the Code of 1873, as section 814, it read: "But no person will be entitled to any deduction on account of any obligations of any kind given to any insurance company for the premiums of insurance, nor on account of any unpaid subscription to any institution, society, corporation, or company." And in the Code of 1897, as section 1311, as follows: "But no person will be entitled to any deduction on account of any deposit or security note given in aid of the organization of a mutual insurance company,

for the premiums of insurance, nor on account of any unpaid subscription to any institution, society, corporation or company."

Should the present statute be construed to refer to a subscription to the capital or capital stock of a corporation, company, institution, or society, or to a voluntary donation, gift, and subscription to it, without reference to any interest the donor may acquire therein? Taking the statutes together, it clearly appears that when the clause first found place in the Code of 1851, it had reference to subscriptions to the capital stock of corporations or companies, or to the funds of a society or institution not incorporated, or to be incorporated for the purpose of launching it into business. No other construction is permissible of the entire clause as it appears in the Code of 1851. While this language has been changed somewhat in subsequent enactments, it is manifest not only from the reports of the commissioners having the matter in charge, but from the language of the subsequent codes, that no change was intended. If this be true, then the note in this case was not given as security or as a deposit on account of any unpaid subscription to any institution, society, corporation, or company. An unpaid subscription to an institution, society, corporation or company means primarily an unpaid subscription to or for its capital stock. The reason for the exception we are considering, we apprehend, was that as the subscriber expected to receive an equivalent to his subscription he should not be allowed to deduct the amount of his indebtedness therefor. If the clause we have quoted means subscription to the capital stock of a corporation or company, it must, of course, mean the same thing when applied to an institution or society. That it does refer to capital stock in the first instance is perfectly clear, when the history of the enactment is considered; and it is just as clear, taking the entire act into consideration, that it does not refer to such an obligation as we have before us, which was not a deposit or security note given in aid of

the organization of or on account of any unpaid subscriptions to any institution, society, corporation, or company.

The judgment of the trial court seems to be right, and it is *affirmed*.