C. L. BROKAW, Treasurer for the use and benefit of Kansas City University of Kansas City, Kansas, Appellant, v. W. O. McElroy, Administrator of the Estate of John W. Murphy, Deceased, Appellee.

**Negotiable instruments:** BILLS AND NOTES: CONSIDERATION: BURDEN 1 OF PROOF. A promissory note imports a consideration, especially where a recital of the consideration appears in express terms on the face of the note; and the maker has the burden of proving want of consideration.

**Same:** ENDOWMENT SUBSCRIPTIONS: CONSIDERATION: EVIDENCE. 2 Notes given to aid in the establishment of an endowment fund for a school and intended to be made public and serve as an inducement for the other subscriptions, which were obtained for a like purpose, the school having incurred liabilities on the strength thereof, were

prima facie based upon sufficient consideration; and where such facts were fairly to be inferred from the evidence the question of want of consideration was for the jury.

**Same.** Expense incurred for commissions in obtaining subscriptions to
3    an endowment fund does not constitute consideration for notes given for the subscriptions.

**Same:** EVIDENCE. In this action upon notes of decedent given to aid
4    an endowment fund, it being understood that the contributions might be published in the interest of the project, it appeared that another subscriber contributed on condition that a certain sum be raised within a specified time; that the president of the school, beneficiary of the fund, had written a letter asking a son of such subscriber, who was in possession of the donor's estate, for an extension of the time for raising the total fund, which letter contained a list of contributions among which were the notes in suit, and that the son replied to the president consenting to the extension of time: *Held,* that evidence of such facts was admissible, including the letter granting extension of time, over the objection that the maker of the notes had no knowledge thereof.

*Appeal from Jasper District Court.*—HON. K. E. WILCOCKSON, Judge.

SATURDAY, NOVEMBER 22, 1913.

THIS is an action on four promissory notes. It is brought on behalf of the Kansas City University against the administrator of John W. Murphy, deceased, the maker of the notes. The administrator answered with a general denial and set up also three affirmative defenses. One of the affirmative defenses was that the notes were without consideration. To the affirmative defenses a reply was pleaded by the plaintiff. At the close of the plaintiff's evidence, the trial court directed a verdict for the defendant, on the ground that there was no consideration for any of the notes. Judgment was entered against plaintiff for costs, and he appeals.—*Reversed.*

*Seerley & Clark,* and *O. P. Myers,* for appellant.

*McElroy & Cross,* and *Parker, Parrish & Miller,* for appellee.

EVANS, J.—Four notes are involved. The first note was for $2,000, dated September 24, 1904. The second was for $4,000, dated July 24, 1908. The third was for $4,000, dated October 22, 1908. The fourth was for $10,000, dated June 18, 1909. The following is a copy of the first note:

For value received by me, and for the purpose of securing a fund for the endowment of the Kansas City University, of Kansas City, Kansas, I hereby bind myself, and my heirs, executors and administrators, to pay to the order of the treasurer of said Kansas City University, of Kansas City, Kansas, the sum of two thousand dollars, with interest thereon at the rate of $\frac{1}{10}$ of 1 per cent. per annum from the date hereof. The principal sum hereby secured shall be due and payable on or before the expiration of one year after my decease. Date: September 24, 1904. Post office: Murphy, Jasper County, Iowa. [Signed] John W. Murphy.

The others were all drawn in like form. These notes were each delivered at or about the date thereof and were accepted by the payee. The purpose of the maker was to contribute the amounts named to the payee to carry out the purpose of its organization as a university. The special purpose for which such funds were to be used was indicated upon the face of the notes, and to some extent by letters. This was that the proceeds of the first three notes should be used for the purpose of securing an endowment fund. The proceeds of the fourth note were to be used for "erecting a building on the campus." Other subscriptions were subsequently solicited by the university and received from other contributors. Previous gifts, including those of Murphy, were made public as an inducement to subsequent contributions. This was done, to some extent, at least, with the express consent of Murphy.

In view of the directed verdict below, we are only concerned now with the question whether the evidence in the

record affirmatively discloses want of consideration so as to justify the trial court in taking the case from the jury. We reach a conclusion contrary to such ruling of the trial court. The notes themselves, being promises in writing, imported a consideration. Furthermore, a re-

1. NEGOTIABLE INSTRUMENTS: bills and notes: consideration: burden of proof.

cital of consideration received appeared in express terms upon their face. The burden was on the defendant to show a want of consideration. The plaintiff, however, chose to introduce in his main case considerable testimony in anticipation of the defense. The defendant was, of course, entitled to avail himself of such testimony. Such testimony, however, did not warrant a directed verdict for the defendant. Much of it tended to show a sufficient consideration. Inasmuch as the case must be remanded for a new trial, we deem it appropriate to avoid a discussion of the evidence. The defendant has had no opportunity to introduce his testimony. Much of his argument here in support of the judgment below is predicated upon plaintiff's alleged failure to prove consideration; but the burden is upon him to show the want of consideration in support of his affirmative plea to that effect. This feature of his argument therefore, is not available to him.

I. A sufficient consideration in such a case as this may assume various forms. It is not necessary that the benefit accrue to the promisor. It is frequently, if not usually, true that written promises of this kind are made for the purpose of assisting in the mainte-

2. SAME: endow-ment sub-scriptions: consideration: evidence.

nance of the beneficiary institution within the scope of the purpose for which it was organized. Other assistance from other sources is expected. A contribution by one naturally operates as an inducement to contributions by others. It is not unusual that publicity is given to contributions already made as an inducement to others. If it is within the contemplation of a contributor that the fact of his contribution may be announced to others as an inducement to contributions by them, and if additional con-

tributions be made by reason of such inducement even in part, it operates as a sufficient consideration for the promise of the first contributor. It is not essential, in such a case, that the additional contributions thus induced should be devoted to the same fund or to the erection of the same building. If the original promise, when made, was intended to induce activities and expenditures by the beneficiary in pursuance of the purpose of its organization, and if such activities and such expenditures were induced thereby even in part, it is a sufficient consideration. In either case, it is not necessary that such promise be the sole inducement either to additional contributions by other contributors or to burdensome activities and substantial expenditures by the beneficiary and its appropriate officers. It is not indispensable that *direct* evidence be had that such activities and expenditures or additional contributions were thus induced, or that such inducement was within the contemplation of the parties. If these facts can be found by fair inference from all the circumstances in evidence, it is sufficient at least to make a jury question.

Such an institution as the beneficiary herein is necessarily supported by the co-operation of many people who have a common and unselfish interest in its success. Ordinarily, one man could not carry the load alone. Co-operation is usually within the contemplation of each contributor. His gift would become mere waste if it must stand alone. A contribution, therefore, may be in the nature of a response to a previous contribution by another, or it may be in the nature of an invitation to future contributions by others, or it may partake of the nature of both. All this may become a question of fact in a particular case. It would be manifestly unjust to permit a promisor of a contribution to withdraw his promise after it had served the function of inducing other contributors to incur obligations to the same beneficiary and for the same general purpose. We think that notes of this kind rest upon a somewhat different foundation from a note executed in a transaction, in contemplation of a pecuniary benefit to the maker or to some

other person selected by him, other than the payee. Such notes are frequently, if not usually, executed, not as evidence of a promise to make a future gift, but for the specific purpose of creating a present asset for its beneficiary. A very substantial part of the assets of such institutions exist in this form. To lightly withhold judicial sanction from such obligations would be to destroy millions of assets of the most beneficent institutions in our land, and to render such institutions helpless to carry out the purpose of their organization. Unfortunately, authorities are in conflict at this point, and some courts have applied a very narrow rule to this class of obligations. We think the trend of modern judicial opinion is in the other direction. Various phases of the question have been before this court in the following cases: *Simpson College v. Bryan*, 50 Iowa, 293; *University v. Livingston*, 65 Iowa, 202; *Presbyterian Church v. Baird*, 60 Iowa, 237; *Simpson College v. Tuttle*, 71 Iowa, 596; *Church v. Donnell*, 110 Iowa, 5; *King v. Carroll*, 129 Iowa, 364.

In all the foregoing cases save one, the sufficiency of the consideration was sustained. The exception was *Simpson College v. Tuttle*, 71 Iowa, 596. That case turned upon the correctness of a ruling on demurrer. The ruling of the trial court was sustained. To such holding, however, the following saving paragraph was added: "To this doctrine, however, there must be added the qualification that the benefits to be derived from founding a school, church, or other institution of similar character, may furnish a good consideration for a promise. It must also be remembered, in the case before us, that *such consideration is not advanced by plaintiff*, and the only reference to its existence is contained in the paragraphs of the answer assailed by the demurrer; the other paragraph setting up a total want of consideration." The discussion in each of the above-cited cases is somewhat cautious, and is confined strictly to the particular question therein involved.

A case somewhat similar to the case at bar was considered by the Supreme Court of Ohio in *Irwin v. Lombard Uni-*

*versity,* 56 Ohio St. 9 (46 N. E. 63, 36 L. R. A. 239, 60 Am. St. Rep. 727). We quote from the opinion:

It is equally apparent that, prompted by the promises and gifts of Gilpin and others, 'responsibility has been undertaken' by the university. It did not abandon the educational enterprise which these donors and promisors were desirous of promoting. Whether the object of the promisors was to secure the opportunity of educating their own children under such influences as they desired, or more generally to contribute to the public welfare by increasing the facilities for higher education, it has been accomplished. It has been accomplished by the expenditure of money and the incurring of obligations in reliance upon their promises and similar promises from others. Institutions of this character are incorporated by public authority for defined purposes. Money recovered by them on promises of this character cannot be used for the personal and private ends of an individual, but must be used for the purposes defined. To this use the university is restricted, not only by the law of its being, but as well by the obligations arising from its acceptance of the promise. A promise to give money to one, to be used by him according to his inclination and for his personal ends, is prompted only by motive. But a promise to pay money to such an institution, to be used for such defined and public purposes, rests upon consideration. The general course of decisions is favorable to the binding obligation of such promises. They have been influenced, not only by such reasons as those already stated, but in some cases, at least, by state policy as indicated by constitutional and statutory provisions. The policy of this state, as so indicated, is promotive of education, religion, and philanthropy. In addition to the declarations of the Constitution upon the subject, the policy of the state is indicated by numerous legislative enactments providing for the incorporation of colleges, churches, and other institutions of philanthropy, which are intended to be perpetual, and which, not only for their establishment, but for their perpetual maintenance, are authorized to receive contributions from those who are in sympathy with their purposes and methods—the only source from which, in view of their nature, their support can be derived. Looking to the plainly declared purpose of the

lawmaking department, promises made with a view to dis-
charging the debts of such institutions, to providing the means
for the employment of teachers, to establishing endowment
funds to give them greater stability and efficiency, and what-
ever may be necessary or helpful to accomplish their pur-
poses or secure their permanency, must be held valid.    A
view which omits considerations of this character is too
narrow to be technically correct.   It is not contemplated by
the parties, nor is it required by law, that in cases of this
character the institution shall have done a particular thing
in reliance upon a particular promise.   Not only do the law
and the parties contemplate the permanency of the institu-
tion, but all promisors understand that the proceeds of their
promises will be mingled with prior and subsequent donations,
and together constitute the financial support of the enterprise.
The case must be rare indeed in which such contributions or
promises would be 'made if others had not been made before,
and rarer still in which they would be made but for the
belief that others will be made afterwards.   The requirements
of the law are satisfied, the objects of the parties secured,
and the perpetration of frauds prevented by the conclusion
that the consideration for the promise in question is the
accomplishment, through the university, of the purposes for
which it was incorporated, and in whose aid the promise
was made.   The defense properly failed because there was
neither allegation nor proof of abandonment of those pur-
poses. . . .   Indeed, the validity of such promises is sup-
ported by all the cases in which it has been held that
subscriptions for public purposes of such a nature are enforce-
able.   For the law, regarding the substance rather than the
form, permits no distinction because of the promises being
in one instrument or several instruments.   And the mutuality
of the interests of the several promisors is not to be deter-
mined as a matter of time from the dates of their promises,
but from the continuity and perpetuity of the object to be
accomplished.

This case was followed by the Supreme Court of Minne-
sota in the case of *Albert Lea College v. Brown,* 88 Minn. 524
(93 N. W. 672, 60 L. R. A. 870).   We quote from the opinion
of that court:

One of the first cases to depart from the earlier decisions, which held strictly to the necessity of a pecuniary considera-, tion moving to the promisor, is *Collier v. Society*, 8 B. Mon. [Ky.] 68. In that case a promissory note was given, whereby the maker promised and agreed to pay the Kentucky Baptist Educational Society the sum of $250, to further the interests and aid in the payment of the expenses of its management. The maker refused to pay the note when due, and an action was brought against him to recover thereon. There was no pecuniary consideration moving to him, nor does it appear that the society to which it was given ever incurred any debts or obligations upon the strength of it; but the court held the maker of the note liable, on the ground that as the charter of the society authorized it to accept and receive such donations and gifts, and it was required, under the law, to carry out the directions of donor, a sufficient consideration was shown. A well-considered case (also a departure from the old rule) is *Trustees of Troy Academy v. Nelson*, 24 Vt. 189. In that case defendant, with others, signed a subscription paper, thereby promising to pay to the trustees of the academy the sum of $100 for the purpose of enabling them to pay its debts, provided the sum of $20,000 was subscribed for the same purpose by a certain date. This amount was fully subscribed. Defendant paid one-half of his subscription, but refused to pay the balance. The court held that the obligations imposed upon and assumed by the trustees of the academy to make application of the money as directed by the subscribers to the fund so consummated the contract that defendant could not avoid payment on the ground that there was no consideration for his promise, and that, whether the relation each subscriber bore to the other, or the relation each bore to the academy itself, be considered, defendant was estopped from denying the obligation of the contract. It will be observed in that case that the executory promise of defendant was for the purpose of raising a fund to discharge a past-due indebtedness of the academy, and nothing appears to have been done by the officers in reliance on the promise. In the case of *Trustees v. Cowls*, 6 Pick. [Mass.] 427 (17 Am. Dec. 387) the court held a promissory note by defendant, by which he agreed to pay plaintiff, an educational institution, a sum of money to further its objects and purposes, viz., to educate indigent young men of promising talents and hopeful

piety, valid and enforceable, though it does not appear that any particular obligations were contracted by the officers of the institution on the faith of the promise. The court said: 'Was there a consideration for the note? In one sense there was not—that is, the promisor received nothing from the payee at the time it was given which was of pecuniary value; but it was sufficient to create a consideration that the other party, the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable, either at law or equity, to perform, unless the promisor should be able to show, when sued, that the payee had refused, or was unable or had unreasonably neglected to perform the engagement on his part, in which case a defense might be raised on the ground of no consideration.' . . . In the case at bar the trustees, upon the delivery of the note to them, expressly accepted the same, and thereby assumed the obligations imposed by the terms of the promise; and upon the strength of this promise, and others, were enabled to continue the purposes of the college, when, without it, it would have been necessary that they suspend operations and dissolve the corporation. As already stated, plaintiff was incorporated as an educational institution, and depended for its support, and to enable it to carry out its purposes, upon donations of philanthropists and other charitably disposed persons. Such institutions are expressly authorized, under the provisions of the statute under which plaintiff was incorporated, to accept and receive such donations, and may be compelled and required by the courts to carry out faithfully the purposes of a particular donation. Money contributed to it for the purpose of an endowment fund may not be diverted from that purpose, and its application may be compelled by proper judicial proceedings. Many of the colleges of the present day depend almost wholly upon voluntary contributions for their support, and philanthropists who contribute thereto are impelled to do so by their sentiments of charity, benevolence, and good will; and the opportunity amply repays the outlay, and to them is far greater than any considerations of a pecuniary nature.

None of our own previous cases are decisive of the case at bar. In the conflict of authority, we think the foregoing presents the sounder and perhaps the more modern view.

Such view has also the merit that it is direct and practical, in that it gives legal sanction to the voluntary conduct and manifest purpose of the parties to the notes. The purpose to be subserved has the sanction of the law in a specific and statutory sense, and there is no apparent reason of public policy why the consideration of such notes should be lightly impeached, or should be determined by artificial tests foreign to the purpose of the parties. Of course, if fraud or deceit or undue influence or breach of obligation were charged, the fact that the consideration was wholly altruistic would be a circumstance proper to be considered and would be available to the defendant as such. In the case at bar, there was evidence that, in reliance on these notes and others, the beneficiary enlarged its plans and increased its work and incurred added expenditures therefor, all of which was done within the scope of its corporate purpose. We think such evidence tended to show consideration.

II. It is urged by the appellant that it incurred expenses in the form of commissions in obtaining these very contributions from Mr. Murphy. It contends that these very expenditures for commissions are a sufficient consideration to support the notes. The suggestion

3. SAME.

is quite abhorrent, and we know of no legal principle to justify it. Such an expenditure cannot be deemed a consideration. Such an expenditure is essentially different in its nature and in its equity from expenditures and obligations incurred in carrying on the enterprise for which the institution was organized, in reliance upon the promise in question.

III. Some rulings on the admission of testimony are presented for our consideration. It appears that in October, 1907, one George Baylor subscribed $1,000 to a fund on condition that $100,000 be subscribed within three

4. SAME: evidence.

years from date. In October, 1910, the president of the university wrote a letter to Curtis Baylor, son of George Baylor, who was then deceased, asking for an extension of time of such condition. This letter contained a list

of contributions to date, including contributions of Mr. Murphy, showing a total of $89,000. In reply thereto, Baylor wrote a letter consenting to an extension of time for two years. The first letter was received in evidence. The reply thereto by Baylor was rejected, on the ground that Murphy had no knowledge thereof. The ground of the ruling was too narrow. Murphy knew and consented that the publication of his gift might be made in the interest of the university. The action of the president was within the scope of such consent, and the letter of Baylor was responsive thereto. It was not material that Murphy should know the particular details of the publications or of the results. It is sufficient that they were within the scope of his contemplation and consent.

What is here said is also applicable to the refusal of the court to permit proof of the publication of Murphy's contribution in the denominational paper. The discussion also will apply to the refusal to receive the testimony of Peterson, president of the board of trustees, as to what was said at a board meeting in relation to Murphy's contribution. We have no way of knowing whether this later proposed evidence was material or not, or whether it might have been inadmissible for other reasons than those urged. The record does not disclose what the plaintiff proposed to prove thereby. The ruling, therefore, does not present reversible error. In view of a new trial, we deem it proper to say that the mere fact that the discussion was had in the absence of Murphy is not a valid objection in the state of this record.

The judgment below must be reversed, and it is so ordered.—*Reversed.*

WEAVER, C. J., and LADD and PRESTON, JJ., concur.