[No. 13910.   Department Two.   July 31, 1917.]

DePauw University, *Respondent*, v. Mary Ridpath
Ankeny, *Executrix etc., Appellant.*[1]

Subscriptions—Contract—Certainty.   A subscription to an endowment fund is not void for uncertainty in that it is stated to be in consideration of the "attempt" of the trustees to add $500,000 to the endowment fund, which is capable of being interpreted as referring to the attempt then and thereafter to be made.

Same.   Such contract is not void for indefiniteness in failing to define the nature of the attempt.

Same—Consideration.   Efforts expended in procuring subscriptions to an endowment fund of a university constitute a sufficient consideration to support a promise to pay a subscription, if, in reliance thereon, an act has been done or money expended.

Same.   Where a subscription to an endowment fund was, with others, exhibited to prospective subscribers, and subsequently $27,000 was subscribed and paid to meet the expenses of the campaign, it sufficiently appears that the subscription was relied on and money expended after it was made.

Pleadings—Motions—Judgment on Pleadings.   Where motions for judgment on the pleadings were made by both parties, they are bound by the record as it then was when the motions were heard.

Subscriptions—Complaint—Sufficiency.   A complaint upon a contract to subscribe an endowment fund in consideration of the attempt of the trustees of a university to add to the fund a specified sum, alleging that the trustees made the attempt and did all the things required of them by the contract, is sufficient to state a cause of action, in the absence of motion to make more definite and certain.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 18, 1916, upon findings in favor of the plaintiff, in an action on a subscription contract, tried to the court.   Affirmed.

*Turner & Geraghty (Edmond J. Farley,* of counsel), for appellant.

*Cullen, Lee & Matthews,* for respondent.

[1] Reported in 166 Pac. 1148.

MAIN, J.—This action was brought by the plaintiff against the executrix of the estate of William M. Ridpath, deceased, to recover upon a subscription to the permanent endowment fund of DePauw University. The trial resulted in a judgment in favor of the plaintiff. From this judgment, the defendant appeals.

The facts, so far as material to the questions here presented, are substantially these: During the year 1910, DePauw University, acting through its board of trustees, and desiring to increase its endowment fund, made application to the board of trustees of what is known as the general education board of New York City for a contribution to its endowment fund. On May 24, 1910, the general education board offered to contribute $100,000 on condition that the university would raise from other sources the sum of $400,000 on or before the close of the 31st day of December, 1911. The university accepted the offer of the general education board, and appointed a committee to at once inaugurate a campaign to secure the $400,000 required by the terms of the offer of the general education board. Thereafter the university, through its committee appointed for that purpose, proceeded to canvass the country to procure subscriptions for the $400,000 mentioned. In this canvass, among others, the subscription in question was procured. The writing which evidenced the subscription agreement is as follows:

"DePauw University Endowment
"$1,000                                    Mar. 18, 1911.
"In consideration of the attempt of the trustees of DePauw University to add five hundred thousand dollars to the permanent endowment fund of said university, I hereby subscribe and promise to pay to such fund the sum of one thousand dollars, payable to DePauw University at the banking house of The Union Trust Company, of Indianapolis, treasurer of the said university, as follows: In five equal annual installments, one-fifth on or before January 1, 1912, one-fifth on or before January 1, 1913, one-fifth on or before January 1, 1914, one-fifth on or before January 1, 1915, and one-fifth

on or before January 1, 1916, with interest at the rate of five per cent per annum after maturity until paid.

"W. M. Ridpath."

After this subscription was made, it, together with others in like or greater amounts, was used as an argument to induce subscriptions on the part of others, and for this purpose a list of such subscribers, including the name of Mr. Ridpath, was exhibited to persons solicited for funds, and after exhibiting such list, subscriptions were obtained. The canvass was continued until the close of the year 1911, at which time the $400,000 had been fully subscribed. In addition to this, approximately $27,000 was subscribed for the purpose of meeting the expenses of the campaign. The university received from the general education board the $100,000 which had been promised it, and a large portion of the subscriptions had been paid in, the funds invested, and the income was being used for the purpose of carrying on the work of the university. No part of the subscription upon which this action is based was paid, and as already indicated, the action is for the purpose of collecting thereon.

It is first claimed that the writing is too indefinite to be made the basis of legal rights or obligations, and, in support of this contention, two points are made: (a) That it does not appear from the writing or the pleadings that the attempt referred to in the writing was one to be thereafter made; and (b) that the nature of the attempt is not defined.

Referring to the first point, we think the word "attempt," used in the writing, does not necessarily refer to something that had gone before, but is capable of being interpreted as referring to the attempt then being and thereafter to be made to add $500,000 to the permanent endowment fund of the university. The law does not look with favor upon the destruction of contracts because of uncertainty, and the courts will, if possible, so construe a contract as to carry into effect the reasonable intention of the parties if it can be ascertained. In 6 R. C. L., page 645, it is said:

"However, the law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. Though there are some formal imperfections in a written contract, still it is sufficient if it contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves. The maxim *Id certum est, quod certum reddi potest,* applies."

As to the second point, that is, that the nature of the attempt is not defined, taking into consideration the purpose of the contract and the object to be accomplished, it cannot be held that the contract is unenforcible because of indefiniteness. What is necessary to be done in pursuance of an attempt to add to the endowment fund of a university has a reasonably well understood meaning. It may be said to be a matter of common knowledge that, in pursuance of such attempts, the thing to be done is the solicitation of subscriptions or donations. It would be applying too rigid a rule to hold that this contract is void for uncertainty. The case of *Barton v. Spinning,* 8 Wash. 458, 36 Pac. 439, is not controlling here. There the respondents had contracted to use the columns of the Tacoma Ledger for the purpose of advancing the price of real estate, when they had no control over the columns of such paper and the extent of the use of such columns was not certainly defined. As already stated, the word "attempt," used in this contract, when read in the light of the purpose to be accomplished, has a reasonably certain meaning.

It is next contended that efforts expended in procuring subscriptions do not constitute a consideration to support a promise to pay a subscription. Whatever may have been the holding of the earlier cases, the rule supported by modern authority is that a subscription agreement to pay money to a charitable, benevolent or educational institution is supported by a good consideration and is therefore enforcible if,

in reliance upon such agreement, an act has been done, money expended, or obligations incurred. *Albert Lea College v. Brown,* 88 Minn. 524, 93 N. W. 672, 60 L. R. A. 870; *Brokaw v. McElroy,* 162 Iowa 288, 143 N. W. 1087, 50 L. R. A. (N. S.) 835; *Irwin v. Lombard University,* 56 Ohio St. 9, 46 N. E. 63, 60 Am. St. 727, 36 L. R. A. 239; *Barnett v. Franklin College,* 10 Ind. App. 103, 37 N. E. 427; *Keuka College v. Ray,* 167 N. Y. 96, 60 N. E. 325; *King v. Carroll,* 129 Iowa 364, 105 N. W. 705; *Philomath College v. Hartless,* 6 Ore. 158, 25 Am. Rep. 510; *Young Men's Christian Ass'n of Wenatchee v. Olds Co.,* 84 Wash. 630, 147 Pac. 406.

In the last case cited, it was said:

"It is generally held that, if work has been done or expenditure has been made upon the faith of and in reliance upon a subscription, a consideration is thus furnished to support the promise."

It is next claimed that no efforts or money were in fact expended pursuant to or in reliance upon the promise in question. The evidence shows, as above stated, that this subscription, together with others in like or greater amount, was exhibited to prospective subscribers as an argument to induce subscriptions, that the full amount was in fact subscribed, and that, in addition thereto and subsequent to the making of this subscription, approximately $27,000 was subscribed and paid to meet the expenses of the campaign. This evidence, if true —and it is not contradicted—would show that the subscription contract in question was relied upon in fact, and that, after it was made, money was expended and obligations incurred.

One other point remains for consideration. The original complaint, aside from the formal parts, set out the note and alleged generally,

"That pursuant to the terms of said promissory note, the trustees of said DePauw University did attempt to add five hundred thousand dollars to the permanent endowment fund

of said university, and did all of the things required of them to be done by the terms of said note   .   .   ."

No motion was made, so far as appears from the record here, to make the complaint more definite and certain. A demurrer was presented, which was overruled. Thereafter an answer was filed and a reply thereto. With the pleadings in this shape, both parties joined in a motion for judgment on the pleadings. It may be here conceded that, if the complaint failed to state a cause of action, the judgment should have been granted upon the appellant's motion. Both motions were overruled, and subsequently an amended complaint was filed which stated in detail the facts constituting the attempt and the result thereof. So far as the motions for judgment on the pleadings are concerned, both parties are bound by the record as it was when these motions were heard. *State ex rel. Brown v. Superior Court,* 87 Wash. 524, 151 Pac. 1126.

It follows, therefore, that, if the original complaint did not state a cause of action, the appellant was entitled to a judgment on the pleadings upon her motion. From the excerpt quoted from the complaint, it appears that the allegations are general and, in part at least, conclusions. While the complaint was undoubtedly subject to a motion to make more definite and certain, had such been made, it does not necessarily follow from this that it is not sufficient to imperfectly state a cause of action. It is alleged that the trustees of the university, pursuant to the terms of the subscription agreement, did attempt to add $500,000 to the permanent endowment fund of the university. This is what they were required to do by the terms of the note, and further, it was alleged that the trustees did all of the things required of them to be done by the terms of the note. While the pleading is by no means a model of excellence, and the motion for judgment on the pleadings with the complaint in that form, first made by the respondent, was doubtless an improvident motion, yet we think the allegations are sufficient to state a cause of action and to admit of proof of what was done by the trustees, or

under their direction, in pursuance of the attempt, since, as above stated, the word "attempt," as used in the note and in the pleadings, has a reasonably certain meaning.

The doing of the acts, the expending of the money, and the incurring of the obligations which are involved in such attempt, according to the rule above stated, are sufficient consideration to support the promise, and in the absence of a motion to make more definite and certain, these facts could have been shown under the original pleading.

The judgment will be affirmed.

ELLIS, C. J., CHADWICK, MORRIS, and MOUNT, JJ., concur.