[No. 8255.  Department One.  December 10, 1909.]

J. A. HUDSON, *Respondent*, v. P. C. ELLSWORTH, *Appellant.*[1]

EVIDENCE—PAROL EVIDENCE TO VARY WRITING.  Where a mortgage provided that the mortgagor shall keep the buildings insured for the benefit of the mortgagee and deliver the policies of insurance to him, oral evidence that the mortgagee agreed to secure the insurance and that the mortgagor paid him $30 and took a written receipt therefor at the time of the execution of the mortgage, is not inadmissible as varying the terms of the mortgage; and the mortgage and receipt should be construed as one instrument.

SAME—SECONDARY EVIDENCE—LOSS OF WRITING.  In such a case, upon establishing the loss of the receipt, oral evidence is admissible to prove its contents.

PLEADINGS—AMENDMENT AT TRIAL.  Error cannot be predicated on the allowance of a trial amendment to the complaint, when no continuance was asked and no abuse of discretion shown.

CONTRACTS — CONSIDERATION — GRATUITOUS SERVICE — MORTGAGE— AGREEMENT TO SECURE INSURANCE—LIABILITY FOR LOSS.  A mortgagee who had required a stipulation in the mortgage for insurance of buildings on the premises is not liable for the loss of the property by reason of agreeing to secure the insurance, accepting the insurance premium, and giving a receipt therefor, where he had not entered upon performance of the service, unless the same was all one continuous transaction, so that the giving of the mortgage would constitute the consideration for the agreement to secure insurance; the mere payment and acceptance of the premium being *nudum pactum* and insufficient alone to support a subsequent promise.

FULLERTON, J., dissents.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 3, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover for the loss of property agreed to be insured, after a trial on the merits.  Reversed.

*E. P. Dole* and *J. E. McGrew*, for appellant.

*Larrabee & Wright* and *J. L. Corrigan*, for respondent.

[1]Reported in 105 Pac. 463.

Gose, J.—The appellant, on September 18, 1906, loaned the respondent $1,900, due in three years, for the purpose of building a dwelling house on certain town lots, taking as security a mortgage upon the property. The mortgage provided:

"The mortgagor hereby agrees (until full satisfaction of this mortgage)—to keep all buildings upon said premises insured against fire to the extent of twenty-five hundred dollars, in a company or companies acceptable to, and for the benefit of, the mortgagee, and to deliver the policies and renewals thereof to the mortgagee."

The amended complaint states that the appellant demanded as further security for the loan, that the respondent should have the dwelling insured, and that after the mortgage had been delivered the appellant agreed, in consideration of the payment of the premium to him by the respondent, that he would have the dwelling insured as stipulated in the mortgage; that the respondent paid him the amount of the premium; that thereafter the respondent constructed the dwelling house, which was of the reasonable value of $3,500, and which was totally destroyed by fire on the 6th day of December, 1908; that the appellant did not insure the property, and that the respondent, relying upon the promise of the appellant to procure the insurance and believing that he had done so until after the house was burned, did not insure the same. The appellant answered, denying that he agreed to procure the insurance, or that the respondent paid him the premium. Upon the issues stated, the case was tried to a jury, resulting in a verdict and judgment for the respondent in the sum of $2,500. From this judgment the appeal was taken.

Over the objection of the appellant, the respondent was permitted to testify that, after the mortgage had been acknowledged, the appellant said to him, "Now, what about insurance"; that if respondent would pay him the premium, he would see that the dwelling was insured; that appellant stated that the premium on a $2,500 policy for three years

would be $30, "and so then I told him that I would pay him
the $30 and he could get the policy, and he said that he would
do it; that I then paid him the $30 and the appellant gave me
a receipt"; that the receipt stated: "Received of J. A. Hud-
son $30 for insurance which was to be applied on the house.
The sum of the insurance was to be $2,500. (Signed) P. C.
Ellsworth"; that he gave the receipt to his wife. Other evi-
dence of the respondent shows that the house referred to in
the receipt was the dwelling to be constructed upon the mort-
gaged premises. The respondent's wife testified that the re-
spondent gave her the receipt, and corroborated him as to its
contents. The house was destroyed by fire within three years
from the date of the mortgage.

The appellant assigns error upon the admission of this
testimony, and contends that it varies the terms of the written
contract. We think not. A stipulation in the mortgage re-
quiring the respondent to advance the premium and the ap-
pellant to procure the insurance, would have been valid and
binding upon both the parties. The mortgage would have
been a sufficient consideration to support such contract. This
seems to us to be elementary. If the respondent during the
negotiations, either before or after the execution and deliv-
ery of the mortgage, but as a part of the transaction, paid
the premium to the appellant, and he agreed to procure the
insurance and gave the receipt which we have set out, the two
instruments would be construed together as one transaction,
and the mortgage would be a sufficient consideration to sup-
port the promise of the appellant to procure the insurance.
Suppose in lieu of the quoted clause in the mortgage, it had
provided that the mortgagee, upon the payment to him of
the sum of $30 by the mortgagor, would take out insurance
upon the dwelling house in the sum of $2,500 for three years,
loss, if any, payable to the mortgagee according to his inter-
est, would its validity be debatable? It is fundamental that
written instruments executed as one transaction will be con-
strued together.

Nor is the appellant's contention tenable that the contents of the receipt cannot be proven by parol, after its loss has been established. To illustrate, let us suppose that the respondent had executed a warranty deed as security, and that the appellant had executed an instrument reciting that the deed was in fact given as a mortgage to secure the payment of the loan, that the latter instrument had been lost, and that the appellant was claiming title under the deed—could it be doubted that the contents of the defeasance would be provable by parol?

The respondent at the close of his testimony was permitted to amend his complaint by the substitution of certain words. This is assigned as error. The allowance of the amendment was in the sound discretion of the court, subject, of course, to the right of the appellant to a continuance upon a proper showing, which was not requested. There was no abuse of discretion in permitting the amendment.

The court instructed the jury, in substance, that evidence of prior or contemporaneous negotiations could be considered, but solely with respect to its bearing upon the probability or improbability of a subsequent agreement having been made respecting the insurance; that if they should find from a preponderance of the evidence that, after the execution and delivery of the mortgage, the appellant received the premium from the respondent and agreed to procure the policy, and failed to do so, and the dwelling was destroyed by fire within three years from the date of the alleged agreement, then they should return a verdict in favor of respondent for $2,500, or the value of the building if less than that sum. The learned trial court was evidently of the opinion that the acceptance of the premium by the appellant, subsequent to the delivery of the mortgage, upon a parol agreement upon his part to procure the insurance, made him liable in damages for a failure to do so. In this we think he was in error.

The only ground upon which the appellant can be held responsible under the evidence is that the execution and delivery

of the mortgage, the acceptance of the premium, the agreement of the appellant to procure the insurance, and the execution and delivery of the receipt, were one continuous transaction. In such case the mortgage would furnish a sufficient consideration for the promise, and the contemporaneous instruments would be construed together. Upon the statement of the court, the promise of the appellant would be gratuitous and not enforceable.

"When the agency is gratuitous and the agent has never entered upon the performance of the service, he cannot be held liable for damage resulting from his nonfeasance, there being no consideration to support the promise. The inception of the performance is essential to the agent's liability." 1 Am. & Eng. Ency. Law (2d ed.), p. 1060.

There is an exception to this rule where the party promising to perform is an insurance agent or a factor or a broker.

The respondent urges that the acceptance of the premium was a sufficient consideration to support the promise. But this of itself would only render him liable to an action for the return of the money. As we have seen, when the agency is gratuitous, there is no liability unless the agent has entered upon the performance of the service. In the instant case the service was to procure the insurance. This the appellant did not do, nor does the evidence tend to show that he took any step toward its accomplishment. The respondent cites *Criswell v. Riley*, 5 Ind. App. 496, 30 N. E. 1101, 32 N. E. 814; *Lindsay v. Pettigrew*, 5 S. D. 500, 59 N. W. 726; *Manny v. Dunlap*, Fed. Case No. 9,047; *Morris v. Summerl*, Fed. Case No. 9,837; *Walker v. Smith*, Fed. Case No. 17,086; *Samonset v. Mesnager*, 108 Cal. 359, 41 Pac. 337.

In the *Criswell* case an insurance agent, at the request of the owner, procured and delivered to her a fire insurance policy, issued by a company other than one he represented. She thereafter paid him the premium. The policy provided that the company should not be liable until the premium was actually paid to it. The agent retained the premium. The prop-

erty was destroyed by fire during the term covered by the policy. It was held that the agent was liable in damages for his failure to pay the premium to the company. In the *Lindsay* case an insurance agent loaned for his sister a sum of money, and took a real estate mortgage as security. As further security, he required the owner to deduct five dollars from the proceeds of the loan, as a payment for a policy on the house situate on the mortgaged premises, which he agreed to secure to continue for five years, loss payable to the mortgagee. He failed to effect the insurance, and the house was destroyed by fire during the period for which it was to have been insured. In holding the agent liable in damages, the court pointed out that his purpose in requiring the insurance was both to increase the security for the loan and to obtain the usual commission. In the *Manny* case the owner of farm machinery directed her general agent to procure a policy of insurance on the property, giving specific directions as to the amount and terms of the policy. The agent had money from his principal with which to pay the premium. Failing to procure the insurance and the property having been burned, he was held liable for the loss. In the *Walker* case a London merchant sent goods to the defendant in New York, requesting him to receive them, but not to deliver them to the purchaser without payment for the goods or satisfactory security being given. He received and delivered the goods without receiving payment or security. The purchaser failed, and the defendant received and remitted the amount paid him, retaining no commission. It was held that, although he was an unremunerated agent, having consented to render the service and having undertaken to perform, he was bound to act in conformity with the directions of his principal. In the *Samonset* case the court announced the same general principle.

There is a statement in the *Lindsay* case which supports respondent's contention, but, as we have seen, the party who was held liable was an insurance agent, and the court ad-

verted to the fact that one object in demanding and receiving the premium was that he might obtain the usual commission for effecting the insurance. The cases all announce the same general principle, and we do not think the mere act of accepting the premium is equivalent to entering upon the performance of the duty, as the appellant did no act tending to effect the insurance.

The judgment will be reversed, with directions for a new trial in conformity with this opinion.    .

RUDKIN, C. J., and MORRIS, J., concur.

CHADWICK, J., concurs in the result.

FULLERTON, J., dissents.