[No. 28446.   Department One.   July 2, 1942.]

LOUIS B. HAZLETT *et al., Respondents,* v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, *Appellant.*[1]

[1]Reported in 127 P. (2d) 273.

*Stiger & Stiger,* for appellant.

*DuPuis & Ferguson,* for respondents.

Driver, J.—This is an action by Louis B. Hazlett and wife, mortgagors, against a mortgagee to recover for damage resulting from the alleged breach of a contract to procure fire insurance on the mortgaged premises. A trial to the court and a jury resulted in a verdict in favor of the plaintiffs. Timely motions by defendant for a directed verdict, for judgment notwithstanding the verdict, and for a new trial were denied; and, from the judgment entered on the verdict, it has taken this appeal.

The principal question presented by appellant's assignments of error is the sufficiency of the evidence to sustain the verdict. Viewed in the light most favorable to them, the evidence adduced by respondents may be summarized as follows:

On June 18, 1940, respondents, as security for a loan of $2,125, mortgaged certain real property to appellant. Mrs. Hazlett owned an undivided two-thirds interest in the land, and her brother, Jack Williams, owned the remaining one-third. A portion of the loan was used to purchase Mr. Williams' interest. The mortgage contained the following provisions relative to insurance:

"The Mortgagor jointly and severally does hereby covenant and agree with the Mortgagee as follows to wit: . . . To keep the present building or buildings upon and any which may hereafter be erected upon such premises, insured against fire in such company, or companies, as the Mortgagee may direct, in a sum of not less than Twenty-one Hundred and No/100 Dollars, ($2,100.00), with a mortgagee or loss payable clause attached made payable unto the Mortgagee herein as its interests may appear, and to pay the premiums therefor, and the premiums of any renewals thereof, and deliver the policies and renewals thereof unto the Mortgagee. . . . Nothing herein shall be

deemed to hold the Mortgagee responsible for failure to have insurance placed or for any loss growing out of any defect in any policy, or because of failure of any insurance company to pay for any loss or damage insured against; . . ."

Mr. Hazlett testified that, before the mortgage was signed, he had the following conversation relative to its insurance clauses with Mr. Dierdorff, secretary-treasurer and manager of appellant:

"As I read over the mortgage the mortgage said it was to have $2100.00 insurance. I spoke to him about that and he says we insist on putting insurance on the property to protect ourselves. We spoke about taking it out and he says 'we have the facilities right here, Mr. Kent writes insurance' and I said 'that is all right as long as I have to take out the insurance before I make the loan' and he said 'it will be well taken care of.' Mr. Dierdorff says 'we insist upon insurance.' "

It appears from the record that, while the Mr. Kent just mentioned did customarily write fire insurance in connection with the mortgage loans of appellant association, he was not its agent or employee, but was the representative of a separate and different company, and appellant did not share in his commissions or profit in any way from his insurance business.

After the mortgage was executed, Mr. Dierdorff gave Mr. Hazlett a part of the loan in order that he might pay Mr. Williams and procure from him a quitclaim deed. It proved to be impossible for Mr. Hazlett to get the deed, however, and, in the late afternoon of the same day, he returned the money intended for Mr. Williams to appellant's manager. They then had this further conversation:

"I went down and Mr. Dierdorff said 'all right Louie I will take care of everything for you' and I said 'is there anything more you want me to do' and he said, 'No, I will take care of everything, taxes, insurance and everything.' I thanked him and went on my way."

Mrs. Hazlett corroborated her husband's testimony as to the first conversation, but she was not present at the second one.

Mr. Williams brought in his deed to appellant the next day and received the money for his interest in the mortgaged premises. He testified that nothing was said regarding insurance at that time. The dwelling house on the premises was destroyed by fire on July 2, 1940. It was then discovered that the only fire insurance in effect was a nine hundred dollar policy placed by Mr. Williams some time previously.

■ If the conversations between Mr. Hazlett and appellant's manager occurred before, or contemporaneous with, the consummation of the mortgage transaction between the parties, then any oral agreement based upon such conversations clearly would come within the ban of the parol evidence rule. This court is firmly committed to the principle that, where a written agreement purports to cover the entire subject matter with respect to which the parties are contracting, and fraud or mutual mistake is not claimed, evidence of a contemporaneous or prior oral agreement contradicting or altering the terms of the writing is inadmissible. *Asher Bros. General Illuminating Co. v. General Illuminating Co.*, 193 Wash. 105 (74 P. (2d) 495), and cases cited p. 108; *Sears, Roebuck & Co. v. Nicholas*, 2 Wn. (2d) 128, 97 P. (2d) 633.

■■ However, the trial court adopted the theory that there was sufficient evidence of an independent oral agreement made after the execution of the mortgage to take the case to the jury. The court instructed the jury, in effect, that, to prevail, the plaintiffs (respondents) must establish, by a fair preponderance of the evidence, that defendant (appellant) orally agreed to secure a policy of insurance on the mortgaged premises in the amount of the mortgage indebtedness;

that such agreement was subsequent to the execution of the mortgage; and that there was a consideration for the agreement.

It is the contention of appellant that there is no evidence in the record of any consideration to support a subsequent oral agreement, and that *Hudson v. Ellsworth,* 56 Wash. 243, 105 Pac. 463, is controlling on that point.

In the cited case, a mortgage on real property given as security for repayment of a loan provided that

" 'The mortgagor hereby agrees (until full satisfaction of this mortgage)—to keep all buildings upon said premises insured against fire to the extent of twenty-five hundred dollars, in a company or companies acceptable to, and for the benefit of, the mortgagee, and to deliver the policies and renewals thereof to the mortgagee.' "

After the mortgage had been acknowledged, the mortgagee agreed that, if the mortgagor would pay him the premium, he would see that the dwelling house on the mortgaged premises was insured. The mortgagor did pay the premium and the mortgagee gave him a written receipt therefor. The mortgagee failed to procure the insurance, and the house was destroyed by fire, uninsured. The mortgagor brought suit against the mortgagee to recover for the resulting loss. The jury returned a verdict for the plaintiff mortgagor.

This court held that the receipt was admissible in evidence for the reason that it and the mortgage were written instruments executed as one transaction and, consequently, should be construed together. However, the judgment of the lower court was reversed, and a new trial was granted for error in one of the instructions. This instruction, in the language of the opinion, p. 246, advised the jury, in effect,

" . . . that evidence of prior or contemporaneous negotiations could be considered, but solely with re-

spect to its bearing upon the probability or improbability of a subsequent agreement having been made respecting the insurance; that if they should find from a preponderance of the evidence that, after the execution and delivery of the mortgage, the appellant received the premium from the respondent and agreed to procure the policy, and failed to do so, and the dwelling was destroyed by fire within three years from the date of the alleged agreement, then they should return a verdict in favor of respondent for $2,500, or the value of the building if less than that sum."

Commenting on the instruction, this court said:

"The learned trial court was evidently of the opinion that the acceptance of the premium by the appellant, subsequent to the delivery of the mortgage, upon a parol agreement upon his part to procure the insurance, made him liable in damages for a failure to do so. In this we think he was in error.

"The only ground upon which the appellant can be held responsible under the evidence is that the execution and delivery of the mortgage, the acceptance of the premium, the agreement of the appellant to procure the insurance, and the execution and delivery of the receipt, were one continuous transaction. In such case the mortgage would furnish a sufficient consideration for the promise, and the contemporaneous instruments would be construed together. Upon the statement of the court, the promise of the appellant would be gratuitous and not enforceable.

" 'When the agency is gratuitous and the agent has never entered upon the performance of the service, he cannot be held liable for damage resulting from his nonfeasance, there being no consideration to support the promise. The inception of the performance is essential to the agent's liability.' 1 Am. & Eng. Ency. Law (2d ed.), p. 1060.

"There is an exception to this rule where the party promising to perform is an insurance agent or a factor or a broker.

"The respondent urges that the acceptance of the premium was a sufficient consideration to support the

promise. But this of itself would only render him liable to an action for the return of the money. As we have seen, when the agency is gratuitous, there is no liability unless the agent has entered upon the performance of the service. In the instant case the service was to procure the insurance. This the appellant did not do, nor does the evidence tend to show that he took any steps toward its accomplishment."

It will be noted that the *Hudson* case is factually quite similar to the case at bar, although, in the former, the facts are more favorable to the mortgagor. There, the mortgagor paid the mortgagee the insurance premium and was given a written receipt therefor, circumstances which are not present here. In the *Hudson* case, this court concluded that an oral promise, made by a mortgagee subsequent to the execution of the mortgage, to procure fire insurance for the mortgaged property is gratuitous and not enforcible unless (1) the mortgagee has entered upon the performance of his promise, or (2) the mortgagee is an insurance agent or a factor or a broker. And this conclusion was not altered by the circumstance that, in the *Hudson* case, the insurance premium had been paid, because *acceptance of the premium by the mortgagee was not considered equivalent to entering upon the performance of the duty.*

In the instant case, no receipt is involved; hence there are no contemporaneous written instruments to be construed together. The mortgage cannot be said to furnish supporting consideration for the oral agreement, because, if they were part of one transaction, then the latter would come within the parol evidence rule. Considered as independent and subsequent to the execution of the mortgage, appellant's promise to procure insurance was gratuitous and unenforcible. Neither of the two exceptions stated in the *Hudson* case is applicable. Appellant did not enter upon the

performance of the promised service, and it was not an insurance agent, factor, or broker.

■ Respondents contend that forbearance of their "right and obligation to procure insurance," in reliance upon appellant's oral promise, was sufficient consideration to support a contract, and, they maintain, the rule stated in 1 Restatement of the Law of Contracts, p. 110, § 90, is applicable:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The "illustrations" of the rule set forth immediately following it, p. 111, are of no assistance in determining the meaning and scope of the term "forbearance." Every such illustration in which it is concluded that the promise is binding is one in which the promise induces affirmative action on the part of the promisee. Surely, forbearance was not intended to include the mere passive failure of the promisee to procure elsewhere, or by other means, the service or the thing promised. If so, it would be difficult to imagine a promise which would not be supported by some sort of "forbearance" consideration.

In the 1935 Washington annotations supplementing Vol. 1 of the Restatement of the Law of Contracts, this comment on § 90 appears: "The Washington decisions upon the rule of this Section appear to be divided." Even so, the following cases, cited as supporting the rule, are clearly not in point here: *Hidden v. German Savings & Loan Society,* 48 Wash. 384, 93 Pac. 668; *Young Men's Christian Ass'n v. Olds Co.,* 84 Wash. 630, 147 Pac. 406; *Depauw University v. Ankeny,* 97 Wash. 451, 166 Pac. 1148; *Ellison v. Keith,* 117 Wash. 648, 202

Pac. 241. None are "forbearance" cases. In each of them, the promise induced the payment or expenditure of money or the doing of affirmative acts by the promisee. The three last cited merely applied the well-settled rule that a subscription agreement to pay money to a charitable, benevolent, or educational institution is supported by a good consideration if, in reliance thereon, an act has been done, money expended, or obligation incurred. No case has been called to our attention in which *Hudson v. Ellsworth, supra,* has been overruled, limited, or questioned, and we think it is determinative of the instant case.

The judgment is reversed and the cause is remanded, with direction to dismiss the action.

ROBINSON, C. J., MAIN, MILLARD, and STEINERT, JJ., concur.

[1] Reported in 127 P. (2d) 271.