[No. 38189. Department One. March 17, 1966.]

EUGENE A. PETERSEN, *Appellant*, v. BETTE TURNBULL *et al., Respondents.**

*Reported in 412 P.2d 349.

W. F. Ingram and Bell, Ingram & Smith, for appellant.

Ostrander & Van Eaton, for respondents.

HUNTER, J.—Eugene A. Petersen, plaintiff (appellant), brought this action to recover on a promissory note executed by Bette Turnbull, defendant (respondent). Plaintiff also seeks to foreclose a mortgage on real and personal property given to secure the promissory note. (William G. Himelhoch was joined as a party defendant by reason of a claimed mortgage interest in the realty covered by plaintiff's mortgage. A judgment of default was entered against this defendant, from which no appeal was taken.)

By the unchallenged finding of the trial court, the note and mortgage were issued to plaintiff "solely as the payment of the purchase price of the name, goodwill and chattels of a tavern business in Bremerton, Washington, known variously as Sonia's Tavern and Rendezvous Tavern." Betty Turnbull, the sole defendant (respondent) in this appeal, successfully defended the action on the basis that the note and mortgage were procured by false representations. Judgment was entered denying recovery on the note and foreclosure of the mortgage. (No issue is raised as to right of possession of the property.)

The facts giving rise to the issuance of the note and mortgage are as follows: In November of 1961, plaintiff paid one Billy K. Sparks $4,250 for his equity in the tavern. Plaintiff advanced this money on behalf of one Sonia Coffield, hereafter referred to as Coffield. He thereafter issued checks totaling $4,100 to Coffield for the purpose of making improvements in the tavern. Plaintiff was in turn given a chattel mortgage by Coffield in the amount of $9,000 in February of 1962. The tavern personal property was already

encumbered by a mortgage, which plaintiff later purchased, at or shortly after the time of the transaction with defendant, for a consideration of $6,000. After a few payments, Coffield fell into default under the terms of her mortgage, and plaintiff threatened to foreclose his interest. Coffield then placed an advertisement in a Seattle newspaper offering the tavern for sale. The advertisement, which contains some of the alleged misrepresentations, is as follows:

Modern, 65 kegs, good side money, $5,000 will handle. Owner, La. 4-5130

In answer to this advertisement, defendant contacted Coffield, who took her to plaintiff's residence in Everett. In plaintiff's presence, Coffield represented to defendant that: (1) The tavern sold 85 kegs, though she had only advertised a rate of 65 kegs; (2) she made $1,000 net; (3) the tavern sold 150 cases of bottled beer weekly.

Defendant eventually purchased the tavern, issuing to plaintiff her note and mortgage totaling $22,153.75. Plaintiff's attorney closed the transaction and plaintiff retained all of the proceeds.

The assignments of error are grouped around two basic contentions. Plaintiff's first contention is that the trial court erred when it found that plaintiff had made Coffield his agent for purposes of the sale, and was therefore bound by Coffield's representations to defendant. Plaintiff argues that the relationship between himself and Coffield was one of creditor-debtor, rather than principal-agent, and that defendant knew of this fact. Plaintiff further argues that the trial court's finding of agency must be a finding of a real or implied agency, as opposed to an apparent agency, since the latter depends upon acts and conduct of the alleged principal; and asserts there is nothing in the record to indicate that the plaintiff, by his action and conduct, induced the defendant to believe that Coffield was his partner or agent in the sale of the tavern. Plaintiff then argues that a real or implied agency cannot be shown because an essen-

tial element is missing: control by the principal over the conduct of the agent.

We disagree with the plaintiff's contention. There is ample evidence in the record to sustain the following findings of the trial court:

### XII

That the defendant, Turnbull, met with Colfield [sic] and Petersen to discuss the purchase of the tavern; that said meeting took place at Petersen's house; that Petersen took an active part in the negotiation of the purchase price and value of the tavern. That Colfield [sic] at said meeting in the presence of Petersen did make representations to Turnbull concerning the volume of business of the tavern which representations were false.

### XV

That subsequent to the meeting at Petersen's home, Petersen called many times in person and by telephone to the defendant, Turnbull, urging and inducing her to buy the tavern.

### XVI

That Petersen's investment in the tavern according to the evidence, did not exceed $14,350, which was the entire Colfield [sic] acquisition money and some operating money, yet the purchase price as evidenced by the note and mortgage for $22,153.75 was to Petersen, to the exclusion of Colfield [sic], and retained in full by him.

These findings establish that the plaintiff *did*, by his action and conduct, induce the defendant to believe that Coffield was his partner or agent in the sale of the tavern. His actions were inconsistent with the position of a mere creditor. By actively negotiating in the sales transaction, by having the note and mortgage executed directly to him to the exclusion of Coffield, and by accepting the entire purchase price as evidenced by the note and mortgage, plaintiff demonstrated that the sale was by him and for his benefit. The findings further establish that by retaining the entire purchase price, approximately $7,800 over his security interest, the plaintiff was in fact the principal and Coffield was his agent. It is not necessary that

plaintiff and Coffield understood their relationship to be that of principal and agent, if by their actions such a relationship existed in fact. *Freeman v. Navarre,* 47 Wn.2d 760, 289 P.2d 1015 (1955); *Robbins v. Wilson Creek State Bank,* 5 Wn.2d 584, 105 P.2d 1107 (1940).

■ Within this context, plaintiff is bound by material misrepresentations made by Coffield within the scope of her authority. Restatement (Second), Agency §§ 257, 259 (1958).

In order for the alleged misrepresentations to qualify as an adequate defense of fraudulent inducement to enter into the transaction, they must meet the essential elements of fraud as set forth in numerous Washington cases. See, *e.g., Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 34 P.2d 428 (1934). Despite argument to the contrary, the record amply supports the trial court's findings that eight of these nine elements are present in this transaction. As to the remaining essential element, that of justifiable reliance, the trial court made no specific finding. Moreover, the plaintiff contends that the record cannot support such a finding.

Plaintiff's contention is based upon the following factors: Defendant had operated a tavern for two years (the record does not state when), and had visited the tavern here involved three times in the company of plaintiff. Also, one of the representations, concerning the volume of bottled beer sold, was so unreasonably large as to defy belief.

■ The court's findings, which we have held are supported by the record, show that the defendant was induced by Coffield to rely upon her misrepresentations and that she did rely thereon. The business records of the tavern, which would have disclosed the truth or falsity of the representations, were within the exclusive control and possession of Coffield. Under these facts it is clear that the defendant was not required to demand the records for examination. She was therefore entitled to rely on Coffield's misrepresentations. This is in conformity with our holding in *Jenness v. Moses Lake Dev. Co.,* 39 Wn.2d 151, 234 P.2d 865 (1951). wherein we stated:

Unquestionably, appellants were naive and credulous, particularly in the light of their experience in the tavern business, but the rule is well settled in this jurisdiction that a wrongdoer cannot defend his wrongful actions by calling attention to his victim's gullibility.

Also, see, Shattuck, Contracts in Washington 1937-1957, 34 Wash. L. Rev. 467 at 525, 526.

The judgment is affirmed.

ROSELLINI, C. J., HILL, OTT, and HALE, JJ., concur.