[No. 55-40397-1.    Division One.    December 31, 1969.]
Panel 2

DONALD HELLBAUM *et al., Respondents and Cross-appellants,* v. BURWELL AND MORFORD, *Appellant and Cross-respondent.*

*Lycette, Diamond & Sylvester* and *Earle W. Zinn*, for appellant.

*Reed, McLure & Moceri, Roy J. Moceri,* and *William R. Hickman,* for respondent.

Horowitz, A. C. J.—Plaintiffs sued defendant corporation Burwell and Morford (Burwell), a mortgage broker and insurance agent, for damages caused by Burwell's failure to provide adequate fire insurance on plaintiffs' house. Defendant appeals from a judgment entered upon a jury verdict for the plaintiffs contending that the evidence is insufficient to warrant any such judgment and that alternatively defendant is entitled to a new trial.

█ We must assume the truth of the plaintiffs' evidence and all reasonable inferences therefrom and interpret the evidence below most strongly against the defendant in a light most favorable to the plaintiffs. *Leach v. Ellensburg Hosp. Ass'n,* 65 Wn.2d 925, 931, 932, 400 P.2d 611 (1965). Applying this rule, there was substantial evidence as follows:

Burwell conducts both a mortgage brokerage and insurance agency business. To help service its insurance agency business, Burwell had a blanket insurance contract with Gulf Insurance Company (Gulf) insuring Burwell and its

designated owners against fire loss. Gulf's contract required Burwell to write insurance on the basis of 100 per cent of replacement cost. Extension of fire insurance coverage under this blanket policy was initiated by request from Burwell's mortgage department to its insurance department. The latter department then issued a certificate of insurance, a copy of which went to the mortgage department and another to Gulf. However, no copy was sent to the customer.

Prior to April 15, 1966, during the course of preliminary conversations, plaintiffs sought to obtain a mortgage loan of $27,000 through Burwell with which to help pay for the construction of their new home. On April 15, 1966, they executed and delivered to Burwell various Burwell form instruments, including a mortgage loan application dated March 15, 1966, Instructions to Disburse Loan Proceeds, Contractor's Estimate and Bid executed by the contractor, and plans and specifications of plaintiffs' proposed home.

The mortgage application executed by the plaintiffs as proposed mortgagors provided that mortgagors would deliver fire insurance policies to Burwell in at least "$......amount" and that during the continuance of the loan, mortgagors would notify Burwell as the policies expired to renew the same in companies of mortgagors' selection. The blank was not filled in. The Instructions to Disburse Loan Proceeds provided that upon completion and during continuance of the loan, Burwell would notify plaintiffs, as policies expired, to renew all fire insurance policies "the amount carried to be not less than the balance due and owing." The Contractor's Estimate and Bid form, in the space provided for the insertion of a specific bid amount, was filled in by the word "open." Furthermore, there was a notice on the form that the construction was on a "cost plus —fixed fee" basis.

With reference to obtaining fire insurance coverage, plaintiff husband testified:

Q Was any statement made to you by either Jane Epps or Mr. McKown (Burwell's representatives) with reference to insurance under the construction?

A Yes.

. . .

Q What was the substance of what they said?

A Insurance should be taken out and that they would provide the insurance. It was called builder's risk.

Q Did you indicate to them that you would agree to have them take it out?

A Yes.

He also testified that "At the time we made out our mortgage, we did say it would change" and that "At the time of the loan, it was our understanding Burwell and Morford were going to be our insurance representatives." Burwell's representative, Mr. McKown, testified that when Burwell made a mortgage loan on new construction, fire insurance thereon was important because "we have an interest in the property . . . And also to protect" our "customer's interest." He also testified that Burwell advised the customer of required fire insurance called Builder's Risk; that if the borrower had no preference, Burwell would arrange the insurance, and that it so advised the borrower.

Burwell initially, through Mr. McKown, determined that the face amount of the policy should be $31,000 and placed the policy for that amount with Gulf. Later, about July 7, 1966, it sent plaintiffs' written notice of the insurance premium disbursement in the sum of $44.99. Mr. McKown determined the amount of fire insurance coverage based upon the original plans and specifications delivered on April 15, 1966. Plaintiffs informed Burwell that extensive changes were being made in the plans. Subsequently, a second and third set of plans were prepared showing substantial changes. At Mr. McKown's request the contractor brought the changed plans to Mr. McKown and discussed them with him. Mr. McKown made inspection trips to the plaintiffs' premises on May 2, June 3 and July 7, 1966. He testified that the changes under construction were of sufficient substance to be apparent upon reasonable inspection. Burwell at no time notified the plaintiffs of the amount of fire insurance coverage or of the necessity of increasing the

initial amount to reflect the increased cost made necessary by the changes in construction; nor did plaintiffs tell Burwell what the amount of the fire insurance should be nor inquire of Burwell as to the amount of fire insurance placed even after receiving notice of the $44.99 premium disbursed by Burwell; nor did plaintiffs notify Burwell of the increased cost resulting from the changes in the plans, nor request Burwell to increase whatever amount of fire insurance coverage had been originally placed.

Plaintiff husband testified that based on conversations with Burwell's representative prior to plaintiffs' receipt of notice of the insurance premium disbursement by Burwell in the sum of $44.99 he "understood builder's risk was an escalating type of policy . . . the amount of fire insurance would go up with the construction" and he assumed he "would be fully protected from the insurance." Plaintiffs relied on Burwell to fulfill Burwell's promise to protect plaintiffs' interest by fire insurance. Accordingly, plaintiffs did not place any fire insurance or additional fire insurance with anyone else. There is no claim that fire insurance to protect the plaintiffs' interest in an amount equal to replacement cost of their home could not have been obtained from Gulf or other insurer.

Plaintiffs' house was totally destroyed by fire on July 25, 1966. When plaintiffs discovered that Burwell had provided insufficient fire insurance protection to cover their cost of construction, they sued Burwell and the insurer, Gulf. After trial commenced, Gulf paid the amount of fire insurance called for by its policy and the trial continued against Burwell. The parties stipulated at trial that the amount of the fire loss was $41,480.56. The jury returned a verdict for the plaintiffs in the sum of $11,667.24, this sum representing the difference between the stipulated amount of the loss and the policy proceeds paid by Gulf. Judgment was entered on the verdict, the trial court over plaintiffs' objection refusing to add interest on that amount from the date of fire loss.

Burwell contends that the trial court erred in denying Burwell's challenge to the sufficiency of the evidence, its motion for directed verdict for the defendant, and its motion after verdict for judgment notwithstanding the verdict. Plaintiffs contend that if there is substantial evidence supporting the judgment on any theory, the trial court should be sustained. We agree. *Wick v. Irwin,* 66 Wn.2d 9, 400 P.2d 786 (1965). We turn, therefore, to a consideration of the theories of liability relied on by the plaintiffs, namely, breach of contract, negligence and promissory estoppel.

■ There was substantial evidence that plaintiffs and Burwell entered into an oral agreement whereby Burwell undertook to obtain fire insurance to protect plaintiffs' interest in their home property. Defendant's failure so to do made defendant liable for damages for breach of contract. *Graddon v. Knight,* 138 Cal. App. 2d 577, 292 P.2d 632 (1956); *Painter v. Twinsburg Banking Co.,* 84 Ohio App. 418, 87 N.E.2d 502 (1949).[1] Defendant contends, however, that there is no contract because the parties had not agreed upon the specific amount of the insurance to be carried. The contention must be rejected. It is true that the specific amount was not agreed upon but, in effect, a formula for determining that amount was agreed upon. The jury could have found from the evidence that Burwell promised to provide fire insurance coverage from Gulf or another insurer in an amount equal to the replacement cost of the plaintiffs' home in order to protect "our customer's interest." Such a promise is even more definite than a promise to provide "adequate insurance" which was held sufficient in *Graddon v. Knight, supra.* This is especially true in the case of an insurance agent under the duty to exercise reasonable care next discussed. See *Nelson v. Smith,* 140 Wash. 293, 248 P. 798 (1926).

---

[1] *Hazlett v. First Fed. Sav. & Loan Ass'n,* 14 Wn.2d 124, 127 P.2d 273 (1942) is distinguishable in that the oral promise was by a mortgagee to procure insurance required by mortgage. Here, the oral promise is by the insurance agent (who is also the mortgage broker) to procure insurance to protect the mortgagors' entire interest in the mortgaged property, the agent performing his agreement inadequately. See *Painter v. Twinsburg Banking Co.,* 84 Ohio App. 418, 87 N.E.2d 502 (1949).

■ There was substantial evidence that Burwell was liable for negligent failure to provide adequate insurance after undertaking so to do. An insurance agent is liable to its principal for negligent performance of a duty undertaken by the agent to obtain insurance. *Elam v. Smithdeal Realty & Ins. Co.*, 182 N.C. 599, 109 S.E. 632, 18 A.L.R. 1210 (1921). This rule is but an application of the general rule rendering an agent liable to its principal for negligent performance of duty. *Nelson v. Smith, supra; Journal Co. v. General Acc. Fire & Life Assur. Corp.*, 188 Wis. 140, 205 N.W. 800 (1925). Burwell could have obtained fire insurance coverage from Gulf in an amount equal to 100 per cent of replacement cost. Burwell knew from the instruments executed on April 15, 1963, and from conversations and its inspections that the initial plans would and did change at an increased cost. It was for the jury to decide whether the failure to protect the plaintiffs' interest by increasing the amount of required insurance coverage because of increased cost of construction was a violation of the agent's duty to act reasonably in the performance of his duty.

■ There was substantial evidence of promissory estoppel to require performance of Burwell's promise to provide insurance under its oral agreement so to do. Promissory estoppel is to be distinguished from equitable estoppel because the latter is based upon a representation of existing or past facts, whereas, the former requires the existence of a promise. *East Providence Credit Union v. Geremia*, 239 A.2d 725 (R.I. 1968). The doctrine of promissory estoppel has been applied to render enforceable a gratuitous or somewhat indefinite promise to obtain insurance. *Graddon v. Knight, supra; East Providence Credit Union v. Geremia, supra;* Henderson, *Promissory Estoppel and Traditional Contract Doctrine*, 78 Yale L.J. 343 (1969).[2] The doctrine of promissory estoppel based on Restatement of Contracts § 90 (1932) has long been recognized in this state.

[2]Although we need not go so far, there is case support for the view that a promise is enforceable by promissory estoppel even if the promise may not fulfill all the requirements of an offer. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965).

*Central Heat Inc. v. Daily Olympian Inc.,* 74 Wn.2d 126, 443 P.2d 544 (1968); *Corbit v. J. I. Case Co.,* 70 Wn.2d 522, 424 P.2d 290 (1967); *Weitman v. Grange Ins. Ass'n,* 59 Wn.2d 748, 370 P.2d 587 (1962). The five elements of the doctrine are described in *Corbit v. J. I. Case Co., supra:*

(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

We find substantial evidence to support each of the elements of promissory estoppel last described.[3]

The trial court properly overruled the defendant's challenges and motions based on insufficiency of evidence to establish liability.

Defendant next contends that the trial court erred in giving instruction No. 9. That instruction reads:

You are instructed if you find that Burwell and Morford by its acts, representations, admissions or silence, if any, intentionally or negligently induced the plaintiffs to believe that the defendant Burwell and Morford would undertake the acquisition of fire insurance for the premises in question, and if you further find that the plaintiffs had a right to and did in fact rely on the foregoing, and

---

[3] In *Hazlett v. First Fed. Sav. & Loan Ass'n,* 14 Wn.2d 124, 127 P.2d 273 (1942) involving a promise to obtain insurance, the reliance shown was forbearance to obtain another policy of insurance. The court held that forbearance alone was not sufficient; that the reliance had to take the form of other affirmative conduct. The distinction made was criticized in 34 Wash. L. Rev. 70, 71 as "hard . . . to justify on any logical basis. This is a holding which may be vulnerable to attack in future litigation." In *Weitman v. Grange Ins. Ass'n,* 59 Wn.2d 748, 370 P.2d 587 (1962) the doctrine of promissory estoppel was applied to enforce a gratuitous promise by a promissor-insurer in which the reliance consisted of the promisee-insured not taking out other insurance; *i.e.,* forbearance. The court without referring to *Hazlett,* nevertheless applied the doctrine of promissory estoppel. It must be assumed that *Hazlett* on the matter of forbearance has been overruled *sub silentio.* See 38 Wash. L. Rev. 289. The doctrine of *Hazlett* on forbearance was rejected in *East Providence Credit Union v. Geremia,* 239 A.2d 725 (R.I. 1968), the court noting that the *Hazlett* case represented a minority view.

has been prejudiced by such reliance, then the defendant Burwell and Morford will be prohibited under the doctrine of estoppel from denying such acts, representations, admissions or silence, if any, and from denying the existence of an agreement to provide fire insurance. If you find the foregoing, then your verdict shall be for the plaintiffs and against Burwell and Morford.

Burwell excepted stating that it "respectfully excepts to the Court's giving of Instruction No. 9 which relates to the doctrine of estoppel for the reason that there is no basis for the application of the doctrine of estoppel in this case . . ." He took no exception to the instruction embodying plaintiffs' breach of contract or negligence theories.

Plaintiffs first contend that the exception is insufficient to permit any review, citing CR 51(f), *Bichl v. Poinier*, 71 Wn.2d 492, 429 P.2d 228 (1967); *Matthias v. Lehn & Fink Prods. Corp.*, 70 Wn.2d 541, 424 P.2d 284 (1967), and *Roumel v. Fude*, 62 Wn.2d 397, 383 P.2d 283 (1963). In our opinion, the exception was sufficient to raise the question as to whether there was substantial evidence of the existence of the elements embodied in instruction No. 9. See *Bichl v. Poinier, supra; Rutherford v. Deur*, 46 Wn.2d 435, 437, 282 P.2d 281 (1955). The exception, however, was insufficient to call the trial court's attention to any error in the formulation of the doctrine of promissory estoppel embodied in the instruction. An excepting party must state distinctly the matter to which he objects and his reasons therefor. CR 51(f), *Bichl v. Poinier, supra; Matthias v. Lehn & Fink Prods. Corp., supra,* and *Roumel v. Fude, supra.*

We find substantial evidence of the elements purporting to constitute promissory estoppel as set forth in instruction No. 9. We do not, however, pass upon the question as to whether the doctrine of promissory estoppel was correctly formulated in the instruction because the exception taken by Burwell is insufficient to present that question here. Furthermore, Burwell's exception appears to be predicated upon the doctrine of equitable estoppel rather than promissory estoppel and Burwell's brief on appeal so argues the matter. Instruction No. 9 dealt with a promise rather than

with a statement of fact and, hence, makes the exception taken as one beside the point. Even if we consider the exception broad enough to include promissory estoppel, there is substantial evidence of such estoppel as we have already pointed out. Under the circumstances we find no error.

■ Plaintiffs, by cross appeal, contend that the damages to which they are entitled should include interest from date of fire loss rather than from date of judgment. We disagree. Whether we consider the damages in an amount equal to replacement cost to be caused by breach of duty, contractual or delictual, or whether we consider the oral agreement to be an agreement to procure a Gulf fire insurance policy or other insurance policy in accordance with policy terms in an amount equal to replacement cost, the claim at date of the loss is unliquidated. Thus, if we consider the matter from the standpoint of the Gulf insurance policy, then the following considerations are pertinent: The selection of the insurer and the insurance policy was left to Burwell, the insurance agent. It selected Gulf as the insurer and the Gulf policy as the insurance policy. Plaintiffs have raised no objection to the insurer selected nor to the form of the policy issued. Had Burwell taken out insurance in an adequate amount with Gulf, the insurance policy would have provided (as it did with respect to the $31,000 coverage) that there would be insurance

to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair . . .

Ascertainment of the damages sustained under the foregoing formula could not have been determined by mere mathematical computation (*Haynes v. Columbia Producers, Inc.,* 54 Wn.2d 899, 344 P.2d 1032 (1959)) or by reference to a known standard. Opinion testimony would have been

necessary to determine "actual cash value", or the "cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss" and without "allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair  .  .  ." Nor was there an agreement on the amount of the loss at the time of the loss. Indeed there was no agreement as to the amount of the loss until after trial commenced when the parties stipulated that amount. On the other hand, if we consider the plaintiffs' damages without regard to the provisions of the Gulf or other policy, the damages claimed are in an amount equal to replacement cost on the date of fire loss. Such replacement cost is not necessarily the same as the actual cost of construction of the house prior to such loss. Replacement cost means replacement cost in a reasonable amount. Proof of mere expenditure does not establish that the expenditure was reasonably necessary or reasonable in amount. As stated in *Lloyd v. American Can Co.*, 128 Wash. 298, 315, 222 P. 876 (1924), in an action for breach of contract to furnish certain appliances for resale:

> While it is true that the amount of this expenditure was, or could easily have been made, definite and certain, yet the respondent was not entitled to recover it simply because he had expended it but only in the event the expenditure was reasonably necessary for the purpose. As to what items and amounts would be reasonably necessary, was a matter which only a court or jury could determine. There would not be any way of computing it in advance, nor could it be computed by any reasonable standard of measurement.

In the instant case, opinion testimony would have been required to prove the reasonableness of replacement cost— and if replacement cost were on a cost plus a fixed fee basis (the basis used in arriving at the original cost prior to the loss), opinion evidence would have been required including evidence of the reasonableness of the contractor's fee. The necessity for evidence of reasonableness makes the loss unliquidated, (*Mall. Tool Co. v. Far West Equip. Co.*, 45

Wn.2d 158, 273 P.2d 652 (1954); *Weaver v. General Metals Merger,* 167 Wash. 451, 9 P.2d 778 (1932); *Nelson v. Seattle,* 180 Wash. 1, 38 P.2d 1034 (1934); *Hopkins v. Ulvestad,* 46 Wn.2d 514, 282 P.2d 806 (1955)) and precludes the addition of interest prior to judgment. See *Graddon v. Knight,* 138 Cal. App. 2d 577, 292 P.2d 632 (1956).

The judgment is affirmed both on defendant's appeal and on plaintiffs' cross-appeal.

UTTER and STAFFORD, JJ., concur.