[No. 487-3. Division Three. December 6, 1972.]

J. VAN NESS ESTES *et al.*, *Respondents*, v. LLOYD HAMMERSTAD, INC., *Appellant.*

*Douglas A. Wilson,* for appellant.

*William H. Mays* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondents.

EDGERTON, J.—Fire destroyed the newly purchased house of plaintiffs Estes on July 4, 1968. They sued Lloyd Hammerstad, Inc., Frank and Joann Clemons, and Cascade Insurance Company for the resulting loss, and were awarded judgment against defendant Lloyd Hammerstad, Inc. in the sum of $5,730.05. Previously the other defendants were dismissed from the case. Defendant Lloyd Hammerstad, Inc. appeals.

The facts, virtually undisputed, are: Frank Clemons and wife listed their home with the Yakima Multiple Listing Real Estate Board for sale. The defendant Lloyd Hammerstad, Inc. was a real estate firm and a member of the multiple listing service. In April 1968 defendant's agent showed the Clemons property to plaintiffs, who agreed to buy it for $23,250. Plaintiff-buyers paid the sellers the amount of their equity and assumed the existing mortgage of $18,269.95. Defendant handled the entire closing of the sale and, in that connection, its office manager agreed to arrange for transferring the sellers' fire insurance to plaintiff-buyers. The time of this promise was the only factual question in the case. However, that it was made before the closing is clearly indicated by the fact the insurance was prorated in the closing arrangements. The fire insurance policy that the Clemonses carried and which was to be transferred to plaintiffs had a $24,000 limit. The sellers executed their deed to plaintiffs on May 31, 1968 but it was agreed that the Clemonses would remain in possession of the house until July 4, 1968 and pay rent. Then, plaintiffs were to move in on July 5.

In the early hours of July 4, 1968 the residence was substantially gutted by fire. At that time the only insurance on the premises was the policy naming the Clemonses as the insureds and the mortgagee as coinsured. Defendant had failed to arrange the transfer of the insurance to plain-

tiffs' name, as promised. Defendant's agent did write a letter to the insurance agent who had written the Clemons policy, informing him that plaintiffs had assumed the mortgage and the fire insurance policy, and asking that the policy be changed to show plaintiffs to be the insureds. Although this letter was dated July 1, 1968, it bore a July 5 postmark and was not received by the addressee until July 6. Cascade Insurance Company, the insurer, paid off the existing mortgage in the amount of $18,269.95 but refused to pay any further amount. The $5,730.05 judgment granted plaintiffs against defendant was the difference between the policy limit and the mortgage balance.

Defendant urges that its agent's promise to notify the Cascade Insurance Company of the ownership and to secure the transfer of insurance coverage to plaintiffs' name was a gratuitous undertaking, beyond the scope of its duties and so it was not liable for any loss. For its assertion that the mere promise of a party to obtain insurance without independent consideration is gratuitous and not enforceable and not compensable in the event of loss due to failure to perform, defendant relies on *Hudson v. Ellsworth,* 56 Wash. 243, 105 P. 463 (1909) and *Hazlett v. First Fed. Sav. & Loan Ass'n,* 14 Wn.2d 124, 127 P.2d 273 (1942). Although this may once have been the general rule in Washington, its recent application has been limited, if not altogether eroded.[1]

---

[1]*Hudson v. Ellsworth, supra,* and *Hazlett v. First Fed. Sav. & Loan Ass'n, supra,* held as a general rule that "when the agency is gratuitous and the agent has never entered upon the performance of the service, he cannot be held liable for damage resulting from his nonfeasance, there being no consideration to support the promise." The court noted that there is an exception to this rule where the party promising to perform is an insurance agent, or a factor or broker. The *Hazlett* decision has been criticized as being a blind application of stare decisis of the earlier *Hudson* opinion. In 34 Wash. L. Rev. 70, 71 (1959) the author noted that the rationale of *Hazlett* is "hard indeed to justify on any logical basis. This is a holding which may be vulnerable to attack in future litigation." In *Weitman v. Grange Ins. Ass'n,* 59 Wn.2d 748, 370 P.2d 587 (1962), the Supreme Court applied the doctrine of promissory estoppel to enforce a gratuitous promise by an insurer. The court found that, to his detriment, the insured relied on the gratuitous

 Defendant claims it is not liable because it is a real estate brokerage firm and not a fire insurance agent. The fact is, however, that through the actions of its office manager and his promise to transfer the insurance to plaintiffs, defendant became in law an insurance agent as to plaintiffs. Plaintiffs relied on defendant's promise and defendant tardily attempted performance. Had its letter to the insurance carrier broker been timely written and delivered it is reasonable to believe the necessary changes in the insurance policy would have been made and plaintiffs would have suffered no loss. In making the promise to effect the change in the insurance defendant made itself plaintiffs' agent for that purpose. The trial court so found, saying: "[T]he defendant Lloyd Hammerstad, Inc. agreed to notify the Cascade Insurance Company of the change in ownership of the real property and to secure the transfer of the policy of fire insurance from the defendants Clemons to the plaintiffs." Moreover, defendant acted to accomplish this. It procured the information from the mortgagor needed for obtaining the transfer, prorated the premium on the closing statement and, although too late, its agent did write the letter asking that the transfer be made. An agency relationship between plaintiffs and defendant was created.

> [It] may arise without an express understanding between the principal and agent that it be created. It does not depend upon an express undertaking between them that the relationship exists. *Petersen v. Turnbull*, 68 Wn.2d 231, 412 P.2d 349 (1966). If, under the circumstances, the parties by their conduct have created an agency in fact, then it exists in law.

---

promise of the insurer in not taking out other insurance. The court did not refer to either *Hazlett* or *Hudson* cases, and applied the doctrine of promissory estoppel. As noted in a footnote by the court in *Hellbaum v. Burwell & Morford*, 1 Wn. App. 694, 463 P.2d 225 (1969), "it must be assumed that *Hazlett* on a matter of forbearance has been overruled sub silentio." The same conclusion was reached in 38 Wash. L. Rev. 289 (1963). In *Hellbaum* the court, following the lead of *Weitman*, also applied the doctrine of promissory estoppel to enforce an oral gratuitous promise by an insurance agent to procure sufficient insurance.

*Matsumura v. Eilert,* 74 Wn.2d 362, 368, 444 P.2d 806 (1968).

■ Having undertaken to act as plaintiffs' agent regarding the fire insurance, and failed through negligence, defendant is liable for the damage. This is so, in spite of defendant's contention that the agency was a gratuitous one.

> Unless otherwise agreed, a gratuitous agent is under a duty to the principal to act with the care and skill which is required of persons not agents performing similar gratuitous undertakings for others.

Restatement (Second) of Agency § 379(2) (1958). *See also* Restatement (Second) of Agency § 378 and § 401(c) (1958); Restatement (Second) of Torts § 323 (1965). Restatement (Second) of Torts § 323 (1965) provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

■ The trial court found that the defendant did more than merely bring a buyer and seller together. The defendant prepared the closing statement, agreed to prorate the fire insurance policy between the plaintiffs and the Clemonses, agreed to notify the insurance company of the change of ownership of the real property, and promised plaintiffs that it would have the policy of fire insurance transferred to them. Defendant's undertaking to transfer the insurance into plaintiffs' name was consensual in nature, created an agency relationship between the parties, and this agency relationship gave rise to a duty on the part of the defendant. It is generally recognized that an agent is subject to a duty to its principal to act for the benefit of the principal in all matters connected with his agency. *Cant-*

*well v. Nunn,* 45 Wash. 536, 88 P. 1023 (1907). *See also* Restatement (Second) of Agency § 387 (1958); 3 Am. Jur. 2d *Agency* § 199 (1962). Under the facts and circumstances of this case the defendant is liable either by the doctrine of promissory estoppel in contract or for negligent nonperformance of the duty undertaken by the agent to obtain insurance. *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 463 P.2d 225 (1969); *Weitman v. Grange Ins. Ass'n,* 59 Wn.2d 748, 370 P.2d 587 (1962); Restatement (Second) of Agency § 378 (1958); Restatement (Second) of Torts § 323 (1965).[2]

■■ Defendant also contends the measure of damages is improper and not supported by the evidence. Defendant fails to cite any authorities in support of this assignment of error and hence it need not be considered by this court. *State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965). However, we find substantial evidence to support the trial court's finding. That is sufficient. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

In computing damages the trial court correctly reasoned that, had the defendant performed according to its promise or acted in accordance with its duty, plaintiffs would have had an insurance policy of $24,000 on the premises. An insurance expert testified that, had the policy been in force so as to protect both mortgagor and owner, his company would have paid to the limits of the policy, *i.e.,* $24,000, or the actual cost of replacement, whichever was the lesser amount. There was other testimony, also, that replacement cost was greater than $24,000. Accordingly the court used $24,000 as the figure plaintiffs and their mortgagor would have received but for defendant's failure to arrange transfer of the insurance to plaintiffs. So the court correctly computed plaintiffs' damages by subtracting the amount of the mortgage paid by Cascade Insurance Company,

[2]*See Seavey on Agency* § 141 at 236 (1964) for the principle that both tort and contract estoppel liability may and should attach to a gratuitous agent who by his promise has caused another harm for an unexcused failure to perform.

*i.e.,* $18,269.95 from the $24,000 face amount of the policy, and awarded plaintiffs judgment for the difference, *i.e.,* $5,730.05. We find no error.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.